COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
|---|---|---|
| RANDY HAGOOD, | | No. 08-11-00280-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 6 |
| | § | |
| COUNTY OF EL PASO, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 2008-3384) |
| | § | |

## **O P I N I O N**

Randy Hagood brought suit against his former employer, the County of El Paso, alleging disability discrimination and retaliation in violation of the Texas Commission on Human Rights Act. On May 11, 2011, the County filed a combined traditional and no-evidence motion for summary judgment. After hearing arguments, the trial court entered a final judgment and, without specifying the grounds, granted summary judgment in favor of the County. For the following reasons, we affirm.

## **FACTUAL SUMMARY**

Randy Hagood began working for the County as a paralegal in the district attorney's office in March 2001. In early 2007, the County remodeled the district attorney's office. At the time, Hagood was on extended leave after settling an issue regarding overtime pay, which is

unrelated to the instant suit. Hagood was also reassigned from the Appellate Division to the White Collar Crime Division. As a result of these changes, when Hagood returned to work in February 2007, he had been relocated from a private office to an open cubicle.[1] The distance from Hagood's new cubicle to the white collar unit was approximately the same as the distance from his old office to the white collar unit.

On March 20, 2007, Hagood complained to the County for the first time regarding an alleged physical disability. It is undisputed that Hagood's right foot was partially amputated when he was approximately fifteen years old. As a result, Hagood walks on the remaining part of his foot while wearing a prosthetic device to help with his balance. In his March 20 e-mail to Marcos Lizarraga, Hagood claimed that the distance he had to walk in the office was aggravating his partially amputated foot.[2] Hagood requested the County provide a reasonable accommodation for his physical handicap. He also insisted that the County move him to an "office" outside of his new supervisor's office. Lizarraga set up a meeting to discuss Hagood's complaints and on March 26, 2007, Lizarraga, Hagood, and two representatives from the County's human resources department met to discuss accommodations.[3]

---

[1] There was testimony that the remodeling was in response to overcrowding in the office because of a substantial increase in the number of attorney's in the DA's office between 2001 and 2007.

[2] According to the EEOC charge:

> Although some employees of the DA's Office knew he had a foot injury dating from his childhood, the injury never interfered with Mr. Hagood's job performance and he never requested ADA accommodations until March 2007. To the contrary, Mr. Hagood was known as an avid golfer and never had any problems walking hundreds of feet several times a day to and from the coffee room, the break area and for lunch. When his unit supervisor retired in May 2007, Mr. Hagood asked him to call so that they could play golf together.

The statements also appear in deposition testimony.

[3] In March 2007, Hagood also filed a worker's compensation claim listing the date of injury as March 14, 2007 and identified the injury as a swollen and painful foot due to "walk[ing] to and from supervisor's office." Hagood's claim was later denied because he failed to submit any medical reports to support his allegations. Hagood did not appeal the decision.

On May 7, 2007, Hagood presented the County with forms from Dr. Johann Penninck restricting Hagood to walking thirty feet per day. The following day, the County placed Hagood on unpaid leave. On June 11, 2007, Hagood was observed walking in excess of his doctor's prescribed restriction through worker's compensation surveillance.

On June 11, 2007, Hagood informed the County that Dr. Penninck had adjusted his walking restriction to 100 feet per day. Dr. Penninck had also requested that Hagood's workstation be placed within fifteen feet of his supervisor's office. On June 21, 2007, the County terminated Hagood's employment. According to the termination notice, Hagood was terminated for failing to participate in good faith to find a reasonable accommodation for his alleged disability and for failing to be candid with the County regarding the extent of his disability.

On August 29, 2008, Hagood filed suit against the County under Chapter 21 of the Texas Labor Code. He alleged that the County: (1) discriminated against him because of his disability; (2) denied him the reasonable accommodation of limiting his walking distance; (3) terminated him because of his disability; (4) failed to engage in the interactive process as required; and (5) retaliated against him for opposing a discriminatory practice and/or filing a charge.

The County filed a traditional and no-evidence summary judgment. Hagood filed a response opposing the County's motion. On July 20, 2011, without specifying the grounds for its ruling, the trial judge entered an order granting the County's motion. The record further reflects that both parties were notified of the trial court's order on July 28, 2011. On August 2, 2011, the trial court entered a second final judgment. On August 29, 2011, Hagood filed a motion for new trial and on September 26, 2011, he filed the instant appeal. Issue One, Hagood argues he presented sufficient evidence to raise a fact issue with respect to his disability claim.

Similarly, in Issue Two, he contends the trial court erred in granting summary judgment because a genuine issue of material fact exists concerning his retaliation claim.

## JURISDICTION

We begin by addressing the County's contention that we lack jurisdiction to hear this case because Hagood failed to timely file his notice of appeal.

### *Applicable Law*

Generally, a party must file notice of appeal within thirty days of when the judgment is signed. *See* TEX.R.APP.P. 26.1. However, where a party timely files a motion for new trial, the appellate time table is extended, allowing a party has ninety days from the signing of the judgment to timely file their notice of appeal. *See id.* at 26.1(a)(1). To be considered timely and thus operate to extend the appellate timetable, a motion for new trial must be filed within thirty days after the judgment was signed. *See* TEX.R.CIV.P. 329b(a); *Williams v. Flores*, 88 S.W.3d 631, 632 (Tex. 2002); *Padilla v. LaFrance*, 907 S.W.2d 454, 458 (Tex. 1995).

Where a trial court modifies, corrects, or reforms a judgment, in any respect, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed. TEX.R.CIV.P. 329b(h). Any change, whether material or substantial, made in a judgment while the trial court retains plenary power, operates to delay the start of the appellate timetables until the date the modified, corrected, or reformed judgment is signed. *Check v. Mitchell*, 758 S.W.2d 755, 756 (Tex. 1988); *see also Clark v. McFerrin*, 760 S.W.2d 822, 825 (Tex.App.--Corpus Christi 1988, writ denied)(finding that a reinstated judgment which was identical to first except for the date of entry qualified as modification, correction, or reformation of said judgment thereby restarting the appellate timetables); *Holder v. Holder*, 808 S.W.2d 197, 198 (Tex.App.-- El Paso 1991, no writ)(indicating that a second judgment, signed within a trial court's period of

plenary power, would operate to restart the appellate timetables even if only change was the signatory date).

*Relevant Facts*

On July 20, 2011, the trial court issued the following order granting the County's motion for summary judgment:

### ORDER

On this the 15th day of July, 2011, came on to be heard Defendant's Motion for Summary Judgment. The Court having considered said Motion is of the opinion that the Motion should be in all things granted.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Summary Judgment is GRANTED.

SIGNED the   20   day of   July   , 2011.

Then, on August 2, 2011, the trial court signed a second order which provided as follows:

### FINAL JUDGMENT

On May 11, 2011, Defendant, COUNTY OF EL PASO, filed its Motion for Summary Judgment. Plaintiff RANDY HAGOOD filed its response to the County's Motion for Summary Judgment on July 8, 2011. A hearing on Defendant's motion was held on July 15, 2011.

The Plaintiff and Defendant appeared by and through their respective attorneys and announced ready for said hearing. At the conclusion of the hearing and upon oral argument of counsel, the Court granted Defendant's motion for summary judgment.

IT IS THEREFORE ORDERED by the Court that Plaintiff take nothing from Defendant.

IT IS FURTHER ORDERED by the Court that Plaintiff's attorney recover no fees associated with this judgment and it is the finding of the Court that Plaintiff is not the prevailing party and as such Plaintiff's attorney is not entitled to any fees whatsoever arising from the prosecution of this cause.

IT IS, THEREFORE, ORDERED ADJUDGED AND DECREED that this cause be and is dismissed with prejudice to the rights of Plaintiff to refile the

action or any part of it against the County of El Paso.  All relief requested in this case and not expressly granted is denied.

SIGNED on this, the ___2___ day of August, 2011.

It is undisputed that Hagood filed his notice of appeal on September 26, 2011, more than thirty days after the trial court signed either of the above referenced judgments.[4]  It is also undisputed that Hagood filed a motion for new trial on August 29, 2011, more than thirty days after the trial court signed the first order but less than thirty days after the trial court signed the second order.  Therefore, if the date the first order was signed (July 20, 2011) dictates Hagood's thirty day period in which to file his motion for new trial, then his motion for new trial, and by extension his notice of appeal, were untimely filed and this Court lacks jurisdiction.  *See* TEX.R.APP.P. 26.1.  However, if the timetable begins to run as of the date the trial court signed the second order (August 2, 2011), then Hagood's motion for new trial was timely and served to extend the appellate timetable thereby making his notice of appeal timely filed.  *See* TEX.R.APP.P. 26.1(a)(1).  Accordingly, we must determine whether or not the August 2 order restarted the appellate timetable.

### *Jurisdiction is Proper*

The County asserts that because: (1) its motion for summary judgment addressed all of Hagood's claims; and (2) no other parties were plaintiffs or defendants, the trial court's first order (signed July 20, 2011), resolved all the issues in the lawsuit.  The County further contends that the August 2, 2011 order "did not expand or reduce the scope of the July 20th order," and therefore argues that the fact the trial court signed a later judgment on August 2 "is immaterial." We disagree.

---

[4]  Hagood's notice of appeal was filed approximately sixty-eight days after the trial court signed the first order and approximately fifty-six days after the second order.

The County is correct that the original summary judgment was signed on July 20, 2011 and that it was a final judgment. But the record also shows that on August 2, 2011, while the trial court retained plenary power, it issued a second final judgment. *See* TEX.R.CIV.P. 329b(d)("[R]egardless of whether an appeal has been perfected," trial court retains "plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed.").

Under *Check*, any change made in a judgment while the trial court retains plenary power delays the start of the appellate timetables. *See Check*, 758 S.W.2d at 756 ("[A]ny change, whether or not material or substantial, made in a judgment while the trial court retains plenary power, operates to delay the commencement of the appellate timetable until the date the modified, corrected or reformed judgment is signed.") Although a change need not be material or substantial, we note that here, the second judgment included a statement that Hagood was not entitled to recover any attorney's fees. A claim for attorney's fees is a claim for affirmative relief. As such, the second order disposed of a claim for affirmative relief that was not disposed of in the trial court's first order. This affirmative act by the trial court operated to extend its plenary power and delay the start of the appellate timetable.

Accordingly, Hagood's appellate timetable restarted and began running from August 2, 2011. *See In re J.L.*, 163 W.W.3d 79 (Tex. 2005)("[B]ecause the trial court actually modified and corrected its judgment while it retained plenary power jurisdiction to do so, the time for filing the notice of appeal must be calculated from the date of the new final judgment."); *see also* TEX.R.CIV.P. 329b(h)("If a judgment is modified, corrected or reformed in any respect, the time for appeal shall run from the time the modified, corrected, or reformed judgment is

signed . . . ."). As such, Hagood's motion for new trial and his subsequent notice of appeal, were both timely and this Court has jurisdiction. *See* TEX.R.APP.P. 26.1(a)(1), 26.3.

## SUMMARY JUDGMENT

In Issue One, Hagood argues that he presented sufficient evidence to raise fact issues concerning both (1) the extent of his disability; and (2) the County's failure to make any reasonable accommodations of said disability. In Issue Two, Hagood claims the trial court erred in granting the County's motion for summary judgment on his retaliation claim.

### STANDARD OF REVIEW

We review a summary judgment de novo. *Frost National Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). In conducting our review, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661. Where, as here, the trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the summary judgment grounds are meritorious. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000).

A "no-evidence" motion for summary judgment is essentially a motion for a pretrial directed verdict and is reviewed under the same legal sufficiency standard that applies to directed verdicts. *See* TEX.R.CIV.P. 166a(i); *General Mills Restaurants, Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 832-33 (Tex.App.--Dallas 2000, no writ); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Seidler v. Morgan*, 277 S.W.3d 549, 552 (Tex.App.--Texarkana 2009, pet. denied). A trial court should grant a no-evidence motion when: (1) there is a

complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Therefore, on appeal, we must determine whether the non-movant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Chapman*, 118 S.W.3d at 751. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals, Inc.*, 953 S.W.2d at 711. By contrast, less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Chapman*, 118 S.W.3d at 751, *quoting Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

Under the "traditional" motion for summary judgment standard, a defendant seeking summary judgment against a plaintiff's cause of action bears the initial burden of either conclusively negating at least one element of that cause of action or conclusively establishing all elements of an affirmative defense. *See* TEX.R.CIV.P. 166a(c); *Frost National Bank*, 315 S.W.3d at 508-09; *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). *Provident Life & Accident Insurance Company v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003); *Cathey*, 900 S.W.2d at 341. A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the movant meets its burden of proof, the burden shifts to the non-movant to provide

sufficient evidence to raise a fact issue. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

**DISCRIMINATION AND REASONABLE ACCOMMODATION CLAIMS**

*Applicable Law*

Hagood brought his complaint under the Texas Commission on Human Rights Act codified at Chapter 21 of the Texas Labor Code. *See* TEX.LAB.CODE ANN. §§ 21.001-.556(West 2006). Because one of the purposes of the Act is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964," we look to federal case law for guidance in conducting our analysis. *See* TEX.LAB.CODE ANN. § 21.001(1); *Mission Consolidated Independent School District v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012), *citing Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) and *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)(noting that in interpreting the Act, the Texas Supreme Court has consistently looked to analogous federal statutes and the cases interpreting them for guidance); *see also Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996)("Because one purpose of [chapter 21] is to bring Texas law in line with federal laws addressing discrimination, federal case law may be cited for authority.").

In employment-discrimination cases that have not been fully tried on the merits, such as the case before us, we apply the burden-shifting analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Adams v. Artco-Bell Corporation*, No. 03-08-00690-CV, 2010 WL

1507796, at *2 (Tex.App.--Austin Apr. 14, 2010, no pet.). Under the *McDonnel-Douglas* burden shifting approach, the plaintiff has the initial burden to present a *prima facie* case of discrimination. *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex.App.--Fort Worth, 2006, pet. denied).

To establish a *prima facie* case of disability discrimination, Hagood was required to show that: (1) he has a "disability;" (2) he is "qualified" for the job; and (3) he suffered an adverse employment decision because of his disability. *Artco-Bell Corporation*, 2010 WL 1507796 at *2; *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex.App.--Fort Worth, 2006, pet. denied); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996); *Davis*, 188 S.W.3d at 757. With respect to the second element (aka the "qualification" element), the plaintiff can show he is qualified in one of two ways: (1) by proving that he can perform all essential job functions with or without modifications or accommodations; or (2) by showing that some reasonable accommodation by the employer would enable him to perform the job. *Turco*, 101 F.3d at 1093; *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 91 (Tex.App.--Austin 1995, no writ). So long as a plaintiff meets the "minimal" initial burden of establishing a *prima facie* case of discrimination, he or she is entitled to a presumption of discrimination.[5] *Mission Consolidated Independent School District*, 372 S.W.3d at 634, *citing Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *Canchola*, 121 S.W.3d at 739.

If the plaintiff meets his initial *prima facie* burden, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for its termination (or differential treatment) of the employee. *Artco-Bell Corporation*, 2010 WL 1507796 at *2; *Davis*, 188 S.W.3d at 758; *McDonnell Douglas Corp.*, 411 U.S. at 801-03, 93 S.Ct. at 1820. If the defendant meets this

---

[5] "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case is not onerous." *Mission Consolidated Independent School Dist.*, 372 S.W.3d at 634, *quoting Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 [internal quotations omitted].

- 11 -

burden, the presumption of unlawful discrimination created by the plaintiff's prima facie showing is eliminated. *Artco-Bell Corporation*, 2010 WL 1507796 at *2; *Davis*, 188 S.W.3d at 758. The burden then shifts back to the plaintiff who is left with the "ultimate burden to prove that the employer's explanation notwithstanding, it engaged in intentional discrimination." *Artco-Bell Corporation*, 2010 WL 1507796 at *2, *citing Davis*, 188 S.W.3d at 758; *see also McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1820 (recognizing that if the defendant articulates a legitimate non-discriminatory reason for its employment action, then the plaintiff must prove that the employer's stated reason for the adverse action was merely pretext for the real, discriminatory purpose).

"The elements of a 'reasonable accommodation' claim overlap the elements of a disability-discrimination claim to some extent." *Artco-Bell Corporation*, 2010 WL 1507796 at *2, *citing Davis*, 188 S.W.3d at 758. Under a reasonable accommodation claim, a plaintiff must show that: (1) he has a "disability;" (2) an employer covered by the statute had notice of his disability; (3) with "reasonable accommodations" he could perform the "essential functions" of his position; and (4) the employer refused to make such accommodations. *Artco-Bell Corporation*, 2010 WL 1507796 at *2.

### *Evidence of a Disability*

We begin by addressing whether Hagood presented more than a scintilla of evidence that he suffers from a disability protected by the Americans with Disabilities Act. A "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g). "Substantially limits" means a person is

> [u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or

duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Thomann v. Lakes Regional HR Center*, 162 S.W.3d 788, 796 (Tex.App.--Dallas 2005, no pet.), *citing Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479-80, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *see Little v. Texas Department of Criminal Justice*, 148 S.W.3d 374, 383 (Tex. 2004), *citing* 29 C.F.R. § 1630.2(j). A substantial limitation analysis must be an individualized assessment that considers the effects of any mitigating measures taken by the individual. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Whether an impairment is substantially limiting "is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995), *citing* 29 C.F.R. § 1630, app., § 1630.2(j).

Hagood relies on a disability report filled out by Dr. Penninck. The form asks the doctor to check "yes" or "no" in response to the question, "Does your patient's medical condition substantially limit a major life activity?" Dr. Penninck checked "Yes." Dr. Penninck also stated on the June 11 form that Hagood's disability is "permanent" and identifies the major life activity substantially affected as walking.

Viewing, as we must, the evidence in Hagood's favor, Dr. Penninck's form presents more than a scintilla of evidence that Hagood suffers from a physical impairment that substantially impairs a major life activity. We must now determine whether Hagood presented sufficient evidence that he was a "qualified individual" with a disability.

### *"Qualified" Individual Entitled to Reasonable Accommodation(s)*

To avoid summary judgment, Hagood had to show either: (1) that he could perform the essential functions of the job in spite of his disability; or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job. *See Turco*, 101 F.3d at 1093; *see also Daugherty v. City of El Paso*, 56 F.3d 695, 696 (5th Cir.1995), *cert. denied*, 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). The ADA defines "reasonable accommodation" as:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C.A. § 12111(9)(2009).

Hagood bore the burden of proving that an accommodation of his disability existed and that such accommodation was reasonable. *See Riel v. Electronic Data Systems Corp.*, 99 F.3d 678, 683 (5th Cir. 1996). According to Hagood, he met this burden by presenting evidence that he asked the County to move his work cubicle directly outside his supervisor's office. Hagood insists this was a reasonable accommodation based on his disability. His assertion ignores the fact that ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation. *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 457 (6th Cir. 2004).

Once the employee identifies a disability and resulting limitations, and suggests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation. *See Tobin v. Liberty Mutual Insurance*

*Co.*, 433 F.3d 100, 108 (1st Cir. 2005); *Picard v. St. Tammany Parish Hosp.*, 423 Fed.Appx. 467, 470 (5th Cir. 2011). The interactive process requires "communication and good-faith exploration" *See E.E.O.C. v. Chevron Phillips Chemical Co., LP,* 570 F.3d 606, 621 (5th Cir. 2009)*, quoting Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007). When an employer does not engage in a good faith interactive process, that employer violates the ADA. *Chevron Phillips Chemical Co., LP.*, 570 F.3d at 621; *see also Loulseged v. Akzo Nobel, Inc.,* 178 F.3d 731, 735 (5th Cir. 1999). However, when responsibility for the breakdown of the interactive process is traceable to the employee, the employer has not violated the ADA. *Loulseged*, 178 F.3d at 736.

Here, the County presented summary judgment evidence to show that one day after receiving Hagood's request for accommodation, they held a meeting between the County and Hagood to discuss accommodations. The County offered several suggestions to accommodate Hagood's impairment. The County offered Hagood a scanner and increased telephone and email communication to cut down on his inter-office walking. The County also offered Hagood the use of a wheel chair or other mobility device. Yet Hagood rejected each one. Hagood acknowledges that the County offered alternate accommodations, but he claims they were "unworkable." Although an employee is not required to accept an offered accommodation, if he rejects a reasonable accommodation, the individual will no longer be considered a qualified individual with a disability.[6] *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 728 n.3 (6th Cir. 2000); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996).

---

[6] 29 C.F.R. § 1630.9(d) provides:

An individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept. However, if such individual rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the

The County also offered evidence that even if they had provided Hagood an office directly outside his supervisor's office, it would still be impossible to comply with the doctor's limitation that Hagood not walk more than 100 feet per day. If no reasonable accommodation would enable the plaintiff to perform the essential functions of his position, then he is not a "qualified individual" with a disability. *Tyndall v. National Education Centers, Inc. of California*, 31 F.3d 209, 212-14 (4th Cir.1994). We conclude that summary judgment on Hagood's disability discrimination and reasonable accommodation claims was proper. Issue One is overruled.

## RETALIATORY TERMINATION CLAIM

To state a *prima facie* claim for retaliatory discrimination, a plaintiff must show that: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) a causal connection existed between his participation in the protected activity and the adverse employment action. *Pineda v. United Parcel Services, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). Because the *McDonnell Douglass* approach is also applicable to retaliation claims, once a plaintiff establishes a *prima facie* case of retaliatory discrimination, the burden of production then shifts to the defendant to produce evidence of a legitimate non-retaliatory reason for its action.[7] *Fierros v. Texas Department of Health*, 274 F.3d 187, 191 (5th Cir. 2001). If the defendant does so, then the presumption of discrimination disappears and the burden shifts back

---

individual will not be considered qualified.

[7] Hagood contends that the "motivating factor" test applies. He relies on *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473 (Tex. 2001) in support of this assertion. His reliance is misplaced. In *Pineda,* the Fifth Circuit rejected this same argument. Specifically, the court in *Pineda* noted that the *Toennies* "meant that the [motivating factor] standard was the applicable standard in both pretext and mixed motive employment discrimination cases where § 21.125(a) was applicable." *Pineda*, 360 F.3d at 488 n.4. [Emphasis added]. *Pineda* then held that the "but for" standard is the correct standard for claims brought under Section 21.055, as Section 21.125(a), by its own terms, is not applicable to claims brought under Section 21.055. *Id*. at 488.

to the plaintiff to prove that the protected activity was a "but for" cause of the adverse employment action. *Id*.; *Pineda*, 360 F.3d at 488.

Hagood contends he presented sufficient evidence to support his *prima facie* claim of retaliation because: (1) he presented evidence of a written request he made to the County for an accommodation of his disability and this internal complaint constitutes a "protected activity;" (2) it is undisputed that the County terminated his employment which is sufficient to show that the County engaged in an "adverse employment action"; and (3) "[t]he temporal proximity between [his] protected requests for accommodation and his termination are sufficient to raise a fact issue concerning whether the County terminated him in retaliation for his accommodation requests." The County recognizes that when determining whether a plaintiff has met his burden of proof as to the causation element, courts consider the temporal proximity between an employee's participation in a protected activity and an employer's adverse action. It then argues that Hagood was terminated three months after he engaged in the protected activity. Alternatively, the County contends that even if Hagood met his *prima facie* showing, summary judgment is still proper because Hagood failed to present any evidence to rebut the County's legitimate non-retaliatory reason for his termination.

Assuming without deciding that the three month time period between Hagood filing his claim and his termination is sufficient to meet Hagood's initial *prima facie* burden, we have only jumped the first hurdle of the *McDonnell Douglass* analysis. We must next decide whether the County presented sufficient evidence of a legitimate non-retaliatory reason for its adverse employment action. The County presented evidence Hagood was terminated because he failed to participate in good faith in the interactive process to search for a reasonable accommodation that would allow him to perform his essential job functions without violating his medical restrictions.

The County attached a letter written by District Attorney Jaime Esparza which notified Hagood of his termination and included a detailed account of the County's reasons for taking such action.[8]

---

[8]  The letter provided:

Dear Mr. Hagood,

This letter is to notify you that you are terminated from your at-will position as Paralegal effective today, June 21, 2007.

In March 2007 you requested accommodation for your alleged problem with walking. At that time you were offered the opportunity to use a wheelchair, which you declined. You were also offered a scanner to be installed in your cubicle so that you could discuss cases with the attorneys by telephone and send them copies of any relevant documents by email. You also declined to take advantage of this proffered accommodation. A new sign-in location was requested by you and this request was granted. Our office also agreed to look into a better system of delivery and pick-up of documents and the use of a pushcart which would lesson the strain of transporting heavy files. You also asked to be allowed to wear special footwear and were requested to bring in a doctor's note regarding this. This accommodation was never discussed again because you never brought in the appropriate medical documentation.

On March 27, 2007, the El Paso County Human Resources Department sent you a packet of Americans with Disabilities Act forms to be completed by your medical provider. You were sent a reminder letter in April and a further letter on May 17 from the County Attorney's Office. This information was needed to search for a reasonable accommodation that would allow you to perform the essential functions of your position without violating your medical restrictions. According to what you told Ms. Schild and Ms. Perez, you did not even begin the effort to have the ADA forms filled out by your health provider until you received Ms. Schild's follow-up letter of June 5.

On May 7, 2007 you brought a doctor's note to the office which restricted you to walking no more than 30 feet per day. The only accommodation requested by you was to move you from your present workstation (a cubicle) to an office closer to the White Collar Unit. It was pointed out to you that this would violate your doctor's restriction because. regardless of where your workstation was located, you would have to walk hundreds of feet just to get to the office and back, well in excess of the 30 foot restriction.

On June 11 the ADA forms filled out by Dr. Penninck were faxed to the HR Department. Your allowable walking distance was increased to 100 feet per day; however, the only accommodation listed in Dr. Penninck's report was to move your workstation to within 15 feet of your supervisor's workstation. HR wrote to Dr. Penninck informing him that moving your workstation would not meet his restrictions since you would still have to travel several hundred feet each way to get to and from the office. He was asked if you could use a motorized wheelchair, braces or a walker to assist your mobility. Dr. Penninck's office responded to the request for more information by stating he would not change his original form and would not address the need for a wheelchair, walker or crutches.

I believe you have not participated in good faith in the interactive process in searching for a reasonable accommodation that would allow you to perform the essential functions of your position without violating your medical restrictions. You have made it clear that the only accommodation acceptable to you is moving you back into an office. Whenever it has been explained to you that this would continue to violate the doctor's restrictions, you have ignored this issue and refused to consider alternative accommodations such as the scanner or aids to mobility such as a motorized wheelchair, a walker or braces. Therefore there is no accommodation that is reasonable.

I also believe that you have not been candid with this office concerning the extent of your

Therefore, the ultimate burden rested with Hagood to present evidence creating a fact issue as to whether the County's proffered reason was false and the real reason was retaliation. Hagood produced no such evidence. As a result, Hagood failed to establish a genuine issue of material fact on his claim for retaliation. Accordingly, summary judgment was appropriate. Issue Two is overruled.

## CONCLUSION

We conclude that Hagood failed to produce more than a scintilla of evidence to support his claims for discrimination and retaliation by the County. Finding no error, we affirm the trial court's judgment.


May 22, 2013                                ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

---

disability. Although you were restricted to walking no more than 30 feet per day from May 7 through June 11 and no more than 100 feet per day after June 11, you have been observed on several occasions walking considerably longer distances with no apparent difficulty. You apparently have not used a handicapped parking sticker and do not even use the closest non-handicapped parking spaces available to you. ADA claims are taken seriously, so your lack of candor makes your trust unworkable for the position you occupy in the office.

For these reasons, I am terminating your employment in the District Attorney's Office. Your separation forms will list this as a disciplinary layoff (reason 0204), and your last day of employment will be noted as June 21, 2007. You may arrange for pickup of your personal belongings with Juan Sanchez, Chief Investigator, at your convenience. Your separation paperwork will be handled through the County's Human Resources Office.

Sincerely,

Jaime Esparza
District Attorney