

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00746-CV

**ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT**,
Appellant

v.

Catherine **CLARK**,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-19821
Honorable Karen H. Pozza, Judge Presiding

Opinion by:   Rebeca C. Martinez, Justice

Sitting:      Karen Angelini, Justice
              Rebeca C. Martinez, Justice
              Patricia O. Alvarez, Justice

Delivered and Filed:  October 21, 2015

AFFIRMED

Alamo Heights Independent School District (AHISD) appeals the denial of the plea to the jurisdiction it filed in response to the discrimination and retaliation lawsuit filed by former employee Catherine Clark.  We affirm the trial court's order.

### BACKGROUND

Clark was hired by AHISD as a physical education teacher and coach for female students at Alamo Heights Junior School in 2007.  Her direct supervisor was Athletic Coordinator Michelle Boyer.  Boyer was supervised by the campus principal and assistant principals.  According to

Clark, fellow coach Anne Monterrubio began sexually harassing her immediately after she was hired. During new teacher orientation meetings in August 2007, Monterrubio repeatedly made remarks to Clark about assistant principal Georgia Frank's breasts, asking if Clark thought they were real. Soon afterward, Monterrubio began making remarks about Clark's body. During a tennis lesson, Monterrubio said, "Wow, Coach Clark, I think your boobs are going to pop out of your shirt!" The next day, she told Clark that she could see her "g-string" through her pants and that she could see the dimple in Clark's "ass." Monterrubio continued to make crude and inappropriate comments about Clark's breasts and buttocks throughout that week.

On October 18, 2007, Clark reported to Boyer that Monterrubio was using offensive language and making Clark the target of sexual jokes. Boyer did nothing to stop the harassment, and also failed to report Clark's complaint to any member of the administration as required by district policy.[1] Instead, Clark claimed that Boyer began to make improper sexual comments to Clark as well.

Throughout the fall semester, Monterrubio continued to make sexual remarks to Clark. She informed Clark that the male coaches were betting that her breasts were fake. Prior to the Christmas holiday, the female coaches exchanged gifts. After receiving a candle from Clark, Monterrubio indicated she would light the candle in her apartment, and said, "I will think of you the next time I am f - - - ing." At the faculty Christmas party, Monterrubio and Boyer grabbed Clark's buttocks as the coaches were taking a group photograph in front of the Christmas tree. When classes resumed after Christmas vacation, Monterrubio described her break as a "f - - - fest," and asked Clark whether she "got any."

---

[1] The AHISD Board Policy DIA (Local) provides that employees should immediately report alleged instances of sexual harassment to his or her supervisor or campus principal. Any District supervisor who receives a report of prohibited conduct shall immediately notify a District official, including the Title IX coordinator—identified as Dr. Dana Bashara—or the Superintendent.

This behavior continued into the spring semester. In January 2008, Monterrubio watched Clark open a pizza box for the basketball team and warned her to step back so that she did not "get pizza sauce on [her] ginormous tits." On February 14, 2008, Monterrubio showed Clark a photo on her cell phone of her boyfriend's genitals, which he "had manipulated into a heart shape for Valentine's Day." On April 23, 2008, Monterrubio made a comment in front of a student about Clark closing her legs.

On March 3, 2008, after receiving a perfect score on her annual evaluation, Clark told Principal Stephanie Kershner that Boyer and Monterrubio were sexually harassing her. Kershner likewise failed to report Clark's complaint to either Dr. Bashara or the Superintendent as required by AHISD Board Policy DIA (Local) or to take any remedial action. Instead, Kershner told Clark to meet with the wellness counselor, Lisa Lucas, in order to "improve communication" with Monterrubio. Clark informed Lucas that Monterrubio had sexually harassed her, that the sexual harassment had turned into aggression, and that she feared for her safety, as Monterrubio was now "bumping" up against her and "blocking" her from moving freely in and out of the athletic office. Lucas did not report Clark's complaint to the administration.

On May 11, 2008, upon the advice of Lucas, Clark set up another meeting with Principal Kershner. Clark was so upset that she could barely speak, yet Kershner was able to gather that Clark wanted to talk about harassment by Monterrubio and Boyer. Kershner told Clark to compose herself and to write down what she wanted to tell Kershner.

On May 14, 2008, Clark submitted a written complaint to Kershner outlining numerous instances of sexual harassment as well as other retaliatory and harassing conduct by Monterrubio and Boyer. The letter also described how Clark was deterred from making a report because she feared retaliation from Monterrubio and Boyer for reporting the harassment.

Instead of reporting Clark's complaint to the appropriate district official, Kershner conducted her own investigation, and interviewed Monterrubio, Boyer, and four other staff members of the athletic department. On May 20, 2008, Kershner sent an email to Clark, Boyer, and Monterrubio instructing them not to communicate with each other. On May 23, 2008, Kershner sent a letter to Clark, stating that she "currently ha[d] no evidence supporting the details of your experiences and perceptions." Kershner's report was not filed with a district official as required by policy.

When Clark returned to campus in August of 2008, the harassment by Monterrubio and Boyer continued. The three female coaches shared an office area, and Monterrubio asked Boyer, in front of Clark, "I wonder if Coach Clark swallows." Regarding a Viagra commercial, Monterrubio said, "If you have an erection lasting longer than four hours, don't call a doctor, call me." Monterrubio also talked about blow jobs while eating egg rolls, and said, "Let's name the dimples in Clark's ass." Monterrubio talked about Clark's breasts almost every day. Monterrubio also repeatedly used profanity and sexual terms, such as "menage a twat" and "teabag," in front of Clark. On August 26, 2008, Clark met with Kershner and athletic director Gene Phillips. Clark claimed that after this meeting, restrictions were imposed on her that were not imposed on other teachers or district employees. For instance, Clark was told that she could no longer bring her children to the school.

On September 11, 2008, Clark again met with Kershner and Phillips. At this time, Clark expressed concern that her reports of harassment were futile because Kershner never followed up on them. Monterrubio's inappropriate comments continued, and on October 7, 2008, Clark filed a formal charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). Clark was told by Kershner that there would be "consequences" for her complaints.

On October 29, 2008, within days of admittedly receiving notice of the EEOC charge, Kershner placed Clark on an intervention plan, referred to as a "Teacher in Need of Assistance" plan. In her deposition, Kershner testified that the intervention plan was necessary because Clark was ineffective in communicating with co-workers and because she failed to report the allegations of harassment within ten days, even though there is no policy requiring reporting within a definite amount of time.

On February 17, 2009, Clark went on leave pursuant to the Family and Medical Leave Act (FMLA) due to health problems stemming from the anxiety she was experiencing as a result of the sexual harassment and retaliation. Before leaving, Clark selected Gabriela Jordan as a substitute teacher. After one day, Kershner told Jordan not to return and replaced her with Coach Debra Cathey, a personal friend of Monterrubio and Boyer. On April 15, 2009, Clark filed a formal grievance against Monterrubio and requested that either she or Monterrubio be removed from the workplace. AHISD ultimately transferred Monterrubio to another campus.

On May 1, 2009, Clark was placed on administrative leave with pay and ultimately terminated on August 14, 2009. Thereafter, Clark filed suit against AHISD, asserting claims for sexual harassment and retaliation under the Texas Commission on Human Rights Act ("TCHRA"). AHISD subsequently filed a plea to the jurisdiction, arguing that Clark failed to prove each of the prima facie elements of her sexual harassment and retaliation claims under the TCHRA, and therefore failed to invoke the TCHRA's waiver of governmental immunity and establish the trial court's subject matter jurisdiction. Clark filed a response in opposition to the plea to the jurisdiction, as well as a first supplemental response in opposition. Both sides filed evidence in support of their respective pleadings. The trial court denied AHISD's plea to the jurisdiction, and AHISD filed this interlocutory appeal.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The plaintiff has the burden to allege facts that affirmatively demonstrate that the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A plea to the jurisdiction can be used to challenge whether the plaintiff has met her burden of alleging jurisdictional facts, but it can also raise a challenge to the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). Pleadings are construed liberally in favor of the pleader, and all factual allegations are accepted as true. *See id.* at 228.

A trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a traditional motion for summary judgment. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228; *see* TEX. R. CIV. P. 166a(c). The defendant is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction; once the defendant meets its burden, the plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id.* at 227-28. On the other hand, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Garcia*, 372 S.W.3d at 635. An appellate court reviewing a challenge to a trial court's subject matter jurisdiction reviews the trial court's ruling de novo. *Miranda*, 133 S.W.3d at 228.

Employment-discrimination cases employ a unique burden-shifting analysis, where the plaintiff is entitled to a presumption of discrimination if she meets the "minimal" initial burden of

establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Although the precise elements of the prima facie showing vary depending on the circumstances, the plaintiff's burden at this stage of the case "is not onerous." *Garcia*, 372 S.W.3d at 634 (internal citation omitted). "The *McDonnell Douglas* presumption is 'merely an evidence producing mechanism that can aid the plaintiff in [her] ultimate task of proving illegal discrimination by a preponderance of the evidence.'" *Id.* "The prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.*

If a plaintiff successfully demonstrates a prima facie case, the burden of production shifts to the defendant employer to show a legitimate and non-discriminatory basis for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802. "If the defendant employer demonstrates a non-discriminatory reason for its employment action, the plaintiff must show that the defendant's proffered reason is merely a pretext." *Id.* at 804. However, in the context of a plea to the jurisdiction, we are limited to reviewing only whether Clark has shown a prima facie case for her retaliation claim. *See State v. Lueck*, 290 S.W.3d 876, 881-84 (Tex. 2009); *Tex. Dep't of State Health Servs. v. Rockwood*, - - - S.W.3d. - - -, No. 04-15-00042-CV, 2015 WL 3398386, at *7 (Tex. App.—San Antonio May 27, 2015, no pet.). Thus, we do not examine the other *McDonnell Douglas* burden-shifting steps that follow the establishment of a prima facie case, and Clark is not required to rebut the non-retaliatory reasons AHISD articulated for her termination. *Garcia*, 372 S.W.3d at 637-38; *Rockwood*, 2015 WL 3398386, at *7.

As a governmental entity, AHISD is generally immune from suit. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015); *Miranda*, 133 S.W.3d at 224. However, the Legislature has waived immunity for claims properly brought under the TCHRA. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008). That waiver extends only to "those

suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Garcia*, 372 S.W.3d at 636 (citing *Lueck*, 290 S.W.3d at 881-82) (other citations omitted). Accordingly, a plaintiff must allege facts that affirmatively demonstrate the trial court's jurisdiction to hear her discrimination and retaliation claims, i.e., she must plead the elements of her prima facie case. *Nicholas*, 461 S.W.3d at 135; *Garcia*, 372 S.W.3d at 636-37; *Tex. Dep't of Aging & Disability Servs. v. Iredia*, No. 01-13-00469-CV, 2014 WL 890921, at *7-8 (Tex. App.—Houston [1st Dist.] Mar. 6, 2014, no pet.) (mem. op.).

## SEXUAL HARASSMENT CLAIM

### A. Applicable Law

The TCHRA prohibits an employer from discriminating against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. TEX. LAB. CODE ANN. § 21.051 (West 2015). Sexual harassment is a form of prohibited sex discrimination. *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 131 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Courts have generally categorized sexual harassment claims as either "quid pro quo" or "hostile work environment." *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677-78 (Tex. App.—El Paso 1997, writ denied).

When, as here, the allegations of sexual harassment are based on a hostile work environment, a plaintiff must show that (1) she was an employee who belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on the protected characteristic, such as gender; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005); *Gulf States Toyota, Inc. v. Morgan*, 89 S.W.3d 766, 770 (Tex. App.—Houston [1st

Dist.] 2002, no pet.). Same-sex sexual harassment claims are actionable under the TCHRA. *See City of San Antonio v. Cancel*, 261 S.W.3d 778, 783 (Tex. App.—Amarillo 2008, pet. denied) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

To satisfy the fourth element of a hostile environment sexual harassment claim, a plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to create a hostile or abusive working environment. *Nicholas*, 461 S.W.3d at 138 ("sexual harassment is actionable 'only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment'"); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 806 (Tex. 2010). The work environment must be both objectively and subjectively offensive, i.e., one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so. *Mayfield v. Tarrant Reg'l Water Dist.*, No. 08-13-00100-CV, 2015 WL 3622757, at *3 (Tex. App.—El Paso June 10, 2015, no pet. h.). We consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. *Nicholas*, 461 S.W.3d at 138; *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 407 (Tex. App.—El Paso 2002, pet. denied). "Abusiveness requires extreme conduct and takes a middle path between making actionable conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Esparza v. Univ. of Tex. at El Paso*, No. 08-13-00259-CV, 2015 WL 4711612, at *7 (Tex. App.—El Paso Aug. 7, 2015, no. pet. h.); *see also Walthall*, 2010 WL 210988, at *6.

### B. Analysis

As to the first three elements of her hostile work environment sexual harassment claim, Clark alleged that, as an AHISD employee, she was the victim of unwelcome same-sex harassment

perpetrated by Monterrubio and Boyer on the basis of her gender. Specifically, Clark alleged that Monterrubio and Boyer made frequent sexual remarks to her, made comments about her and her breasts and buttocks, and also commented on her naiveté about various sexual practices. She further alleged that they exhibited aggressive and intimidating behaviors toward her, such as touching her buttocks and "bumping" against her and physically "blocking" her from entering and exiting the athletic office.

AHISD challenges the third element of Clark's sexual harassment claim, contending that Clark failed to show that the conduct complained of was based on gender, and that, in actuality, Monterrubio's unprofessional conduct was directed to all of her co-workers, including men.[2] The record before us, however, reflects that the bulk of Monterrubio's comments relate to the fact that Clark is female. For instance, over the two-year period at issue, Monterrubio made a significant number of comments to Clark about Clark's female anatomy, i.e., her breasts, as well as her buttocks. Thus, we conclude Clark alleged sufficient facts to raise a fact issue on the third element of her prima facie case regarding whether she was discriminated against because of her gender.

As to the fourth element, Clark alleged that the harassment was a repeated pattern of behavior consisting of sexual comments, humiliating jokes, insults, ridicule, and intimidation. Clark claimed she was subjected to continuous repeated sexual jokes and obscene language, most of which were directed at her. She further alleged that the stress caused by two years of repeated harassment required her to take FMLA leave.

---

[2] AHISD argues that Clark can only prove a same-sex harassment claim by following one of the three methods described in *Oncale*. *See Oncale*, 523 U.S. at 82. We disagree. Courts have explicitly rejected the implication that the mechanisms for proving same-sex harassment outlined in *Oncale* are exclusive. To the contrary, "[n]o part of the opinion in *Oncale* suggests that the pertinent passage is intended as an exhaustive list of the methods by which a Plaintiff claiming same-sex harassment in violation of Title VII may prove that 'the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex.'" *E.E.O.C. v. BOH Bros. Const. Co., LLC*, 768 F. Supp. 2d 883, 891 (E.D. La. 2011) (quoting *Oncale*, 523 U.S. at 80) (emphasis omitted).

Although it could be argued that most of the acts complained of by Clark were not objectively severe,[3] the repeated nature of the comments and jokes over an almost two-year period was most certainly pervasive. *See Iredia*, 2014 WL 890921, at *6. "Frequent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists." *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007). Thus, we conclude Clark presented sufficient evidence to create a fact question as to whether the complained-of conduct altered the terms, conditions, or privileges of her employment and created an objectively abusive working environment. Clark likewise presented sufficient evidence that her work environment was subjectively offensive, because she testified that she found it to be abusive.

Regarding the final element, Clark alleged that AHISD knew, or should have known, of the harassment and failed to take prompt remedial action. Specifically, Clark stated she reported the harassment to Boyer on two occasions, yet Boyer did not inform her supervisors. Similarly, Principal Kershner did not report Clark's claims of harassment to district officials, even though district policy required that a campus supervisor receiving a complaint of harassment must

---

[3] The following cases have held that arguably more severe conduct was insufficient to alter the terms, conditions, or privileges of employment. *See, e.g., Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 321-22 (5th Cir. 2004) (plaintiff's supervisor made sexually suggestive remarks to her, repeatedly insisted that she be alone with him, remarked on another employee's body, brushed up against plaintiff's breast and behind, once tried to kiss her, once stood in bathroom doorway while plaintiff was present, and once swatted plaintiff's behind with newspaper over one-and-a-half year period); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872 (5th Cir. 1999) (co-worker touched plaintiff's arm several times, rubbed arm down to her wrist, simulated looking up her dress, tried to look down her clothing, and made sexually suggestive comments that included referring to color of her nipples and size of her thighs); *Garcia v. Schwab*, 967 S.W.2d 883, 885, 887 (Tex. App.—Corpus Christi 1998, no pet.) (supervisor stared at and commented on plaintiff's breasts, touched his genitals in front of plaintiff, discussed highly personal and sexual matters with plaintiff, remarked on plaintiff's appearance, and repeatedly made sexual references in attempt to sexually arouse plaintiff); *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 226-27 (Tex. App.—San Antonio 1998, pet. denied) (five incidents of sexual behavior, including several crude jokes, did not create hostile work environment because they were made in social settings during non-work hours); *Green*, 1 S.W.3d at 129, 132-34 (supervisor made numerous sexual comments, including expressing desire to hold "a wet T-shirt contest" with plaintiff as contestant).

immediately notify a district official. Again, when taking the evidence provided by Clark as true, and indulging all reasonable inferences from that evidence in her favor, we conclude Clark alleged sufficient facts to raise a fact issue as to whether AHISD knew or should have known of the harassment and failed to take adequate remedial action.

Having determined that a fact issue exists on each element of her hostile work environment sexual harassment claim, we thus conclude Clark sufficiently alleged a prima facie case of sexual harassment. Accordingly, we hold the trial court properly denied AHISD's plea to the jurisdiction on Clark's sexual harassment claim. *See Nicholas*, 461 S.W.3d at 135-36; *Miranda*, 133 S.W.3d at 228.

### RETALIATION CLAIM

#### A. *Applicable Law*

To establish a prima facie case for retaliation, a plaintiff must show that: (1) she engaged in a protected activity, such as filing a charge or complaint; (2) she was subject to an adverse employment action; and (3) a causal link existed between her participation in the protected activity and the adverse employment action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 286 (Tex. App.—San Antonio 2011, no pet.); *Hagood v. County of El Paso*, 408 S.W.3d 515, 526 (Tex. App.—El Paso 2013, no pet.). The causal link required by the third prong does not rise to the level of a "but for" standard at the prima facie stage. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

#### B. *Analysis*

Both sides agree that Clark engaged in a "protected activity" by filing the EEOC charge in October 2008. *See City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008) (protected activity under the TCHRA includes: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation,

proceeding, or hearing). Additionally, it is undisputed that an adverse employment action occurred in August 2009 when Clark was terminated by AHISD. *See Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (termination is an adverse employment action). Thus, we must now examine whether a causal nexus exists between Clark's protected activity and her termination. In evaluating the "causal link" element of a retaliation claim, we may consider: (1) the extent of the employee's disciplinary record; (2) whether the employer followed its policies and procedures in dismissing the employee; and (3) the temporal relationship between the protected action and the termination. *Bacon v. EDS*, 219 Fed. Appx. 355, 357 (5th Cir. 2007); *Tex. Parks & Wildlife Dep't v. Gallacher*, No. 03-14-00079-CV, 2015 WL 1026473, at *6 (Tex. App.—Austin Mar. 4, 2015, no pet.) (opin. on reh'g, mem. op.). As discussed earlier, because we are reviewing the trial court's denial of AHISD's plea to the jurisdiction, we are limited to reviewing whether Clark has shown a prima facie case for her retaliation claim, and thus do not examine whether Clark has shown pretext. *See Rockwood*, 2015 WL 3398386, at *7; *KIPP, Inc. v. Whitehead*, 446 S.W.3d 99, 112-13 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (declining to consider defendant's pretext arguments because reviewing court does not consider facts and evidence beyond plaintiff's "minimal" burden of establishing her prima facie Chapter 21 employment-discrimination and retaliation claims).

AHISD asserts that because over half a year passed between the filing of the EEOC charge and Clark's termination, there is no temporal proximity sufficient to establish the required causal link. When determining whether an employee has presented some evidence she was fired for engaging in a protected activity, courts consider the temporal proximity between the participation in the activity and the employer's adverse action. *Hagood*, 408 S.W.3d at 527; *Johnson v. City of Houston*, 203 S.W.3d 7, 11 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). "Close timing between an employee's protected activity and the adverse action can provide the causal connection

required for a *prima facie* case" of retaliation under the TCHRA. *Johnson*, 203 S.W.3d at 11; *Tex. State Office of Admin. Hearings v. Birch*, No. 04-12-00681-CV, 2013 WL 3874473, at *23 (Tex. App.—San Antonio July 24, 2013, pet. denied) (mem. op.). Periods of three months, four months, and twenty months between an employee's protected activity and the adverse action, however, have been deemed insufficient without other evidence. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).

Here, Clark filed her EEOC charge on October 7, 2008, and mailed it to AHISD on October 17, 2008. Kershner testified that she received notice of the charge within days of it being mailed. In February 2009, Clark asked to go on FMLA leave. On May 1, 2009, at the end of the school year, Clark was placed on administrative leave. On June 23, 2009, Kershner recommended Clark's termination in a letter to Superintendent Kevin Brown. The next day, Dr. Brown sent a letter to Clark indicating his intent to support Kershner's recommendation and propose that Clark's employment contract be terminated. On June 25, 2009, the AHISD Board of Trustees met and received and accepted Brown's proposal to terminate Clark's employment contract. On August 14, 2009, AHISD informed Clark that her teaching contract was terminated. Thus, eight months passed between AHISD receiving notice of Clark's filing of the EEOC charge and its decision to terminate her employment. Taken alone, the significant time period between the filing of the EEOC charge and her termination fails to raise a fact issue on causal connection; however, the record reveals that Clark presented other evidence to support her prima facie case of retaliation.

Clark presented evidence that her disciplinary record was exemplary. She did not receive a negative evaluation until 2009, after filing her EEOC charge. She also presented evidence that AHISD failed to follow its own policy in firing her. Among the reasons for her prospective termination outlined in its July 14, 2009 letter to Clark, AHISD cites that Clark failed to complete the requirements of the October 29, 2008 "Intervention Plan for Teacher in Need of Assistance."

Clark was found to be "in need of assistance" just days after AHISD received notice of Clark's EEOC charge, and after Kershner warned Clark there would be "consequences" for her complaint. According to Kershner, one of the requirements of the intervention plan was that Clark timely report "her workplace concerns." However, the record presents no evidence showing that employees are required to report instances of sexual harassment within a definite period of time. While AHISD may dispute Clark's contentions, her burden is not onerous at this stage, and we take as true all evidence favorable to her. *See Miranda*, 133 S.W.3d at 228; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("[T]he proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction."); *Tex. Health & Human Servs. Comm'n v. Baldonado*, No. 13-14-00113-CV, 2015 WL 1957588, at *5 (Tex. App.—Corpus Christi-Edinburg Apr. 30, 2015, no pet.) (mem. op.) (noting "relaxed causation standard required to establish a prima facie case of retaliation"). Thus, we conclude Clark raised a fact issue showing a causal link existed between the protected activity Clark engaged in and an adverse employment action against her. As such, Clark established a prima facie case of retaliation under the TCHRA, and the trial court did not err in denying AHISD's plea on this ground. We overrule AHISD's issue as to Clark's retaliation claim.

## CONCLUSION

Based on the foregoing, we hold the trial court did not err in denying AHISD's plea to the jurisdiction as to Clark's sexual harassment and retaliation claims. The trial court's order is affirmed, and the cause is remanded to the trial court for further proceedings.

Rebeca C. Martinez, Justice