**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00143-CV**
_____

**LAMAR UNIVERSITY, Appellant**

**V.**

**JOY DEL SNOOK, Appellee**

_____

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-204160**
_____

**MEMORANDUM OPINION**

Appellant, Lamar University ("Lamar"), brings this interlocutory appeal challenging the trial court's denial of a combined plea to the jurisdiction and motion for summary judgment, seeking dismissal of a lawsuit filed by appellee, Dr. Joy Del Snook. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). We reverse the trial court's order denying Lamar's Plea to the Jurisdiction and Motion for Summary Judgment and render judgment that Snook take nothing against Lamar.

1

BACKGROUND

Snook sued Lamar for violations of section 21.055 of the Texas Commission on Human Rights Act (TCHRA), alleging causes of actions for disability discrimination, harassment, and retaliation, which allegedly occurred after she engaged in a protected activity and resulted in a hostile work environment. *See* Tex. Labor Code Ann. §§ 21.051, 21.055. In her pleading, Snook stated she had been a full-time assistant professor at Lamar since September 2014 and that Lamar singled her out and discriminated against her based on her disability. Snook explained that she was born with cerebral palsy and used an assistive device for walking, and she reported her inability to access buildings, bathrooms, classrooms, and parking to the Human Resources Department, Department Chairs, and upper administration. According to Snook, she notified Dr. Rebecca Weinbaum, Dean Robert Spina, the Human Resources Department, and the Disability Service Coordinator about her inability to access buildings and attend events in the school's Price Auditorium, which is inaccessible to faculty, staff and students who have mobility impairments requiring an assistive device. Snook explained that her inability to fully access buildings caused her to miss presentations and functions that faculty members were expected to attend.

Snook also alleged that Lamar and Weinbaum, her previous Department Chair, failed to consider her requests for accommodations so she could meet her

research and service requirements for tenure and promotions. Snook explained that when she received her 2016 Annual Review, which included a score of 3.1 out of 5, she told Weinbaum and Spina that her evaluation failed to consider her physical limitations, especially in terms of service and research requirements, and used different percentage rates than her colleagues. According to Snook, Weinbaum's failure to revise her evaluation affected her ability to achieve tenure and promotional opportunities. Snook alleged that after she complained about her 2016 Annual Review, Weinbaum removed her as the Clinical Mental Health Counseling (CMHC) Field Experience Coordinator and told her it was to "protect her," and removed her as the faculty representative for Chi Sigma Iota Honor Society (CSI). Snook maintained that she could fulfill those positions regardless of her mobility impairment, and the removals impeded her ability to meet service requirements at the national, university/college, community, and profession levels as required for tenure and promotion, which was one reason for her low evaluation score. Snook also alleged that Weinbaum removed her from her assigned courses, which affected her income and reputation.

Snook maintained that Lamar violated her rights by failing to offer her reasonable accommodations after numerous requests, which led to Lamar discriminating against her based on her disability and giving her a poor performance review in which she was measured unfairly with her non-disabled colleagues. Snook

argued that after she complained about her poor review, Lamar retaliated against her by removing her from her roles and courses and depriving her of tenure and promotions.

Lamar filed a general denial and asserted, among others, the affirmative defense of governmental and/or sovereign immunity. Lamar filed a Plea to the Jurisdiction and Motion for Summary Judgment on both no-evidence and traditional grounds. Lamar argued Snook's claims were jurisdictionally barred because she failed to show the essential elements of her claims. Lamar further argued that Snook's deposition testimony and other uncontested evidence negate elements of her prima facie claims, depriving the trial court of jurisdiction. According to Lamar, the Equal Employment Opportunity Commission (EEOC) investigated Snook's claims and found the evidence failed to show Snook was subjected to an objectional or offensive working environment that rose to the level to create harassment based on disability which affected the outcome of her performance evaluation. Lamar maintained that Snook had not suffered any adverse employment actions because she is still employed, and Lamar has accommodated her throughout her employment. Lamar argued that Snook failed to establish a waiver of sovereign immunity under the TCHRA. Lamar alternatively argued the trial court should dismiss Snook's case because she cannot produce more than a scintilla of evidence raising a genuine issue

4

of material fact on the elements of her prima facie claims of disability discrimination, retaliation, and failure to accommodate.

Lamar argued that Snook admitted in her deposition that she was not discriminated against in her 2016 evaluation or retaliated against based on her disability, and that she has not suffered an adverse employment action. Lamar claimed the evidence affirmatively negates Snook's claims that Lamar failed to provide her with reasonable accommodations or treated her differently than any similarly situated person. According to Lamar, Snook referenced a hostile work environment claim for her department rather than herself, which does not rise to the level required by law, and she does not claim it is because of her disability.

With regard to Snook's 2016 Annual Review, Lamar explained that Weinbaum was the Interim Chair when she conducted Snook's review. University policy requires every faculty member to complete an annual review report setting forth their previous year's contributions in the areas of teaching/instruction, research, publication and creative activities, and professional services to the discipline, university and/or community. Lamar explained that the annual review report is scored on a scale of one to five and the areas are weighed as follows: Teaching-40%, Research-40%, and Service-20%. Lamar further explained Weinbaum assigned Snook a cumulative score of 2.9 with a score of 4 for teaching, 2 for research, and 2.5 for service. According to Lamar, Snook's score was based on

the same weight distributions used to assess all tenure-track faculty members in her department. Lamar explained that Weinbaum informed Snook her score was based on a lack of documentary evidence and a duplicate publication entry from a prior year's report. According to Lamar, since Snook did not understand the annual review process, Weinbaum allowed her to submit a revised report to eliminate incorrect information and include necessary documentation to possibly improve her score.

Lamar explained that when Snook submitted her revised report, Lamar granted Snook's request to change the weight distributions as permitted under its policy to 50% for teaching, 30% for research and 20% for service. Based on the modified weight distributions, Weinbaum assigned Snook a score of 3.1, which was passing and allowed Snook to receive a merit increase. According to Lamar, Weinbaum increased Snook's service score from 2.5 to 3, but Weinbaum felt Snook had failed to meet her research goals and needed to establish a clear research agenda via peer reviewed publications, which was important to tenure. Lamar explained that if Weinbaum had used the weight distributions applied to the other faculty in her department, Snook's score would have been lower than 3.1. Although Snook disagreed with her score, it should be noted that Snook testified in her deposition that she did not believe Weinbaum discriminated against her due to her disability.

Concerning Snook's removal from her positions, Lamar explained that it was not uncommon for faculty members to rotate their program roles, and such changes

are especially relevant because research is more heavily weighted than program work, which tends to not rise to the level of service on the national, professional, or university level. According to Lamar, changing field experience coordinators is common practice, and Snook was not the only field experience coordinator to transition out of her program role in 2017. Lamar argued that Snook's transition in 2017 did not affect her 2016 Annual Review, and Weinbaum informed Snook that program work held minimum weight in the promotion and tenure review and encouraged her to participate in service with professional organizations, the community, and university/college. According to Lamar, it should be noted that Snook acknowledged in her deposition that she never applied or attempted to obtain other service work.

Lamar also explained that Snook requested that she not assume any leadership roles in the department because she was going on leave. Lamar explained that although Snook announced she intended to take over CSI, which is an activity under the CMHC program, Snook never followed up with the Chair or the CMHC Program Coordinator. Lamar stated when Weinbaum received Snook's email about the faculty representatives for CSI, Weinbaum forwarded the email to the CMHC Program Coordinator and requested her to select two faculty members to serve as the representatives. According to Lamar, Snook's email was surprising because she had asked to refrain from leadership positions, and Snook admitted in her deposition

7

that it would make sense not to assign her the role. Lamar also explained that serving as a faculty advisor role to CSI is not a national service position that would be weighed toward tenure.

Lamar stated that Snook's service evaluation was not reviewed in 2017 due to her Family Medical Leave Act (FMLA) leave, and Lamar accommodated Snook in the Fall of 2017 by allowing her to teach online and receive a teaching evaluation. Lamar explained that in Snook's 4th Year Review, she met professional achievement and leadership standards but did not meet the qualifications for her research. Brenda Nichols reviewed Snook's 4th Year Review and indicated the granting of tenure depends upon excellence in teaching and research and scholarly activities, and Nichols explained that Snook was encouraged to focus on a research agenda and enhancing teaching effectiveness.

Regarding the changes to Snook's teaching schedule, Lamar explained that Snook requested a change in her fall schedule because she had a planned surgery in September, and Lamar granted Snook's accommodation request despite her contract requiring that she teach three courses per semester. According to Lamar, the accommodation allowed Snook to teach all her fall classes online and only required her to teach the last two terms of the semester beginning in October 2017. It should be noted that in her deposition, Snook acknowledged that Lamar allowed her to teach online as an accommodation. Lamar also explained Weinbaum eliminated one of

8

Snook's classes because she had inadvertently overscheduled Snook for the fall semester, and the adjustment did not impact Snook's stipend. Lamar argued that it met all Snook's requested accommodations, including furniture placement, schedule modification, online classes, and not holding presentations in the auditorium. Lamar also explained that its policy allows tenure-track faculty members to toll the tenure clock for two years, and it granted Snook's tolling requests.

According to Lamar, Snook failed to state a claim for conduct that violates the TCHRA, and the trial court should dismiss her claims for want of subject-matter jurisdiction. Lamar argued it is entitled so summary judgment on Snook's disability discrimination and retaliation claims because she failed to produce any evidence that she suffered an adverse employment decision because of her disability. Lamar also argued that Snook provided no evidence to support her accommodation claim, because there is no evidence Lamar refused to make any requested accommodations. Lamar further argued that Snook's allegation that she was subjected to a hostile work environment when her department went through the accreditation process does not meet any element of a hostile work environment claim.

Lamar's plea to the jurisdiction and summary judgment evidence includes: the Declaration of Weinbaum; Lamar's policy for Performance Evaluation of Faculty; Snook's 2016 Annual Review based on the modified weight distributions; Snook's 2016 annual review report; emails from Weinbaum and Snook; Lamar's policy

regarding Faculty Obligations and Workloads; Snook's Stipends for Fall 2017; the Declaration of Nichols; EEOC form recommending dismissal of Snook's charge against Lamar; Snook's 4th Year Peer Review in 2020; Nichols's letter to Snook regarding her 4th Year Peer Review; and Snook's deposition.

In her Declaration, Weinbaum explained that she conducted Snook's 2016 review and discussed the required areas of teaching, research, and service, which in 2016 had weight distributions of 40% for teaching, 40% for research, and 20% for service for all tenure-track faculty members. Weinbaum discussed the required areas with Snook and described at length specific areas of concern, including the lack of documentary evidence and duplicative publications, as well as the types of activities and the documents supporting such activities that could warrant a strong performance score. Weinbaum explained that it appeared Snook did not understand the process, so she allowed Snook the opportunity to submit a revised report, but she did not tell Snook she would receive a specific higher score for a revised report.

According to Weinbaum, she granted Snook's request to change the weight distributions to 50% for teaching, 30% for research, and 20% for service, as permitted under Lamar's policy. Snook's new weighted score of 3.1 was passing and allowed her to receive a merit increase. Weinbaum explained "Snook failed to meet her goals in 2016, and Snook needed to establish a clear research agenda via peer reviewed publications on a regular basis," which she lacked in 2016. Weinbaum also

explained that all Snook's evaluations from many Department Chairs have discussed the need for Snook to focus on research because it is heavily weighted in the tenure process, and Snook lacks the required research in her tenure process.

Weinbaum averred it is important that tenure-track faculty not overextend themselves with program work at the expense of their other responsibilities and having faculty members rotate in their program roles is not uncommon, and such changes are especially relevant because research is more heavily weighted than program work. According to Weinbaum, program work tends to not rise to the level of service on the national, professional, or university/college level. Weinbaum explained that two new Field Experience Coordinators were named to the CMHC Program in January 2017, and it is not uncommon for faculty members to transition in and out of program roles. According to Weinbaum, Snook's transition out of the Field Experience Coordinator position did not impede her ability to meet service requirements or result in a low evaluation score on her 2016 evaluation which included events that occurred during calendar year 2015.

Weinbaum also explained that Snook announced she was going to take over CSI Honor Society, an activity that operates under the CMHC Program, but Snook failed to communicate with either the Chair or the CMHC Program Coordinator about CSI. According to Weinbaum, when she received Snook's email inquiring about the two faculty members for CSI, she forwarded the email to the CMHC

11

Program Coordinator and requested that the coordinator pick the CSI representatives. Weinbaum explained that Snook's email was surprising because Snook had previously asked to refrain from leadership roles. Weinbaum also explained that the Field Experience Coordinator and CSI representative are not national service positions that would heavily weigh toward tenure and promotions. Weinbaum recommended that Snook participate in service with professional organizations, community, and university/college level hoping Snook would heed her critical advice for purposes of future evaluations. Weinbaum explained that relying upon appointments by Department Chairs is not evidence of a faculty member's initiative and independence which would be favorably viewed for purposes of promotion and tenure.

Weinbaum explained that Snook was not reviewed in 2017 due to her FMLA leave, and she accommodated Snook in Fall 2017 by allowing her to teach online and adjusting her teaching schedule, despite her contract requirement to teach three courses per semester. Weinbaum further explained that Snook's adjusted schedule did not impact her stipend, which increased by $1,500. Weinbaum averred that Snook is still employed with Lamar and has not been denied any position or salary increase because of her disability or for any other discriminatory purpose. According to Weinbaum, in her 4th Year Review, Snook met the standard for professional achievement and leadership but was found to be lacking in her research agenda.

Weinbaum averred that due to Snook's request that functions not be held in the Price auditorium, Lamar no longer holds any presentations in that auditorium. Weinbaum stated that Snook's requests for furniture placement have been met. Weinbaum explained that Lamar has granted all Snook's tolling requests to stop her tenure clock. According to Weinbaum, she has never harbored any discriminatory animus against Snook or acted in any spiteful manner.

In her Declaration, Nichols averred that she reviewed Snook's 4th Year Review and agreed with the findings of Dr. Wendy Greenidge, Snook's Department Chair. Nichols explained that Greenidge encouraged Snook to increase productivity aligned with her research agenda and seek out additional service commitments. Nichols further explained that Greenidge strongly recommended that Snook continue to focus on enhancing teaching effectiveness and a research agenda, which are two major factors for granting tenure. According to Nichols, she has never harbored any discriminatory animus against Snook or acted in any spiteful manner.

In her deposition, Snook testified that Lamar hired her as a full-time assistant professor in 2014. Snook explained that she has a doctorate in education and supervision and is a Licensed Professional Counselor Supervisor; she usually teaches three classes in a long semester and two classes during the summer. Snook testified that she has cerebral palsy and underwent several surgeries to improve her mobility. Snook explained that she has spastic diplegia, which affects both legs and

requires her to use a walker and wheelchair to stabilize herself when she is outside her home. According to Snook, her condition does not typically affect her ability to teach classes in person because the prior administration planned and offered her accessible parking, classrooms, and other adjustments she requested, such as buttons on the doors.

Snook explained that she began having problems in 2016, when Weinbaum became the Interim Department Chair and Robert Spina became the Dean, because the administration no longer considered her accommodations in advance, such as furniture placement and building assignments with accessible parking. Snook testified that she struggled to get things done and was embarrassed and humiliated. Snook explained that Weinbaum knew of her disability, and she informed Spina that she could not access certain buildings like the Price Auditorium and quit attending functions there. Snook also explained that Kyle Mutz, the Disability Committee Director, told her Price Auditorium was on the list of things that needed to be made more accessible, but Lamar continued to hold events there. Snook testified when the current administration remodeled, they did not replace the accessibility buttons because it was not a requirement of the Americans with Disabilities Act (ADA), and it was difficult for her to maneuver and access the bathroom without buttons.

Snook testified that she was out on FMLA from February to November of 2017 to have surgeries. Snook testified that during her recovery, she expressed to

the doctor it would be easier for her to work from home, so her doctor included in the return to work a request that she work from home. After her FMLA ended, the Dean allowed her to continue working from home, so she has not been on campus in a full-time capacity since Fall of 2019. Snook explained that everyone was teaching online because of COVID, but she was hired to teach in-person classes and assumed she would return to campus when COVID restrictions eased. Snook explained that since she has been teaching classes online through Zoom she no longer has accessibility issues. It should be noted that Snook indicated her only problem was not receiving the proper information and feedback regarding tenure and promotion requirements, and "it was hard to say if it's because of my disability[,]" because she did not know how other people who submitted for tenure had been treated. Snook testified that the administration discriminated against her based on her disability in late 2015 and early 2016, but it stopped with Weinbaum because Snook chose not to interact with the Dean about accommodations since they were not addressed.

Snook testified that when the new Dean came in late 2015, he met with her and talked about the things that were important to achieve tenure, which included research. Snook testified that she has four publications and a recent submission. According to Snook, her publications include a 2015 article from her dissertation, a couple of book chapters in a school counseling book, three encyclopedia entries, and

another encyclopedia entry she recently submitted. Snook testified she is on a tenure track to be an associate professor and goes through a yearly review process, and she had a tenure and promotion review in her second and fourth year.

Snook testified that Weinbaum conducted her 2016 Annual Review, gave her an initial score of 3.1, and indicated she needed to focus more on a scholarship agenda. Snook felt it was a very unfair review and that it prompted her situation with Lamar. Snook explained the previous administration had an awareness and willingness to work with her to ensure that she successfully met tenure and promotion requirements and had adjusted certain requirements such as traveling to national and regional conferences, but Weinbaum penalized her for being unable to do those things. Snook testified that she disagreed with Weinbaum's evaluation and believed Weinbaum evaluated her based on her disability because Weinbaum told her that "she was doing things to protect me because she wanted me to focus more on research[.]"

Regarding research, Snook testified that she understands research is important, but she did not understand why it was important to secure external funding. Snook explained that her department is very small, and Lamar is not a Tier I research institute but a teaching institution, and she was hired with the understanding that teaching was her highest priority and main focus. According to Snook, counseling is not geared towards achieving Tier I research goals like other

16

departments, and some members of her department did not seek external funding for research because they were more focused on teaching and service. Snook agreed that in the annual review research is scored higher than service, and national service is scored higher than local. Snook testified that she scored a 3.9 when Dr. Holmes conducted her 2015 Annual Review, and he encouraged her to continue publications in peer-reviewed journals. Snook explained it was typical to publish a minimum of one publication per year in a journal, textbook, or encyclopedia and each are weighted differently. Snook testified that she focused more on meeting the publishing criteria than on where the content was published. Snook explained that her 2016 Research Goal Achievement Timeline included having more publications in national journals, and in 2016, she had one publication in a national journal and one book chapter.

Snook also testified that in her 2015 Annual Review, Dr. Holmes indicated she needed additional service at the college and university level, which is harder to secure than the department level service her Field Experience Coordinator position was considered. Snook explained that she was penalized for not having service at the college and university level even though there were no available opportunities, and she was uncertain whether others in her department were evaluated in the same manner. Snook testified that Dr. Holmes assigned the following percentages in her 2015 annual review: 50% for teaching, 30% for research, and 20% for service. Snook

explained that in 2016, when Weinbaum indicated she was not using the same percentages that Holmes used, Snook asked Weinbaum to change the percentages, but Weinbaum used 40% for teaching, 40% for research and 20% for service. According to Snook, Weinbaum was inconsistent because she evaluated Snook with the new percentages, and Snook learned when she asked two others in her department, Weinbaum evaluated one person with the new percentages and one with the old ones. Snook estimated there were fifteen people in her department.

Regarding her 2016 Annual Review, Snook testified that Weinbaum gave her a four on her teaching, which "is awesome," but Snook explained she did not reach her goal to do two peer-reviewed submissions and received a score of two. Snook testified that she only had one submission for 2016, and because that submission had a publication year of 2017 for the paper version, Weinbaum did not allow Snook to count it for 2016, which left her without publications for that year. Snook explained that prior Department Chairs had allowed them to choose which year to count the publication, but Snook did not know if Weinbaum treated others in her department the same. According to Snook, Weinbaum was very research oriented and believed Snook needed to be mentored in that area, but Snook did not know if she required others to be mentored. Snook disagreed with Weinbaum's review that she needed a mentor and lacked a clear research agenda. It should be noted that Snook testified that she did not think her score of two for research was based on her disability.

Regarding service, Snook testified that she received credit in her 2016 Annual Review for serving as Field Service Coordinator, because she was not removed until after the evaluation period was over. Snook said Weinbaum removed her from her committees after Snook disagreed with Weinbaum's initial evaluation. Snook explained that Weinbaum allowed her to adjust her annual review report to increase her score, and Weinbaum changed the evaluation percentages to 50% for teaching, 30% for research, and 20% for service, which were the numbers Snook requested. Snook testified that she complained to Holmes about Weinbaum's review.

Snook explained that Weinbaum failed to make accommodations to her evaluation by not giving her credit for her publication and penalized her for failing to attend two national conferences, not having university or college level service despite its unavailability, and not being more involved. Snook also explained that Weinbaum removed her from service positions as Field Experience Coordinator and CSI faculty sponsor, which Snook could easily do, and then penalized her for not having service work. Snook testified that it was not typical to be removed from service positions like she was.

Snook explained that she sued Lamar because she experienced discrimination, and Lamar failed to meet some ADA requirements and subjected her to a hostile work environment. Snook felt Weinbaum and Spina treated her unfairly in the tenure and promotion process due to her disability because they did not make

19

the adjustments previous administrations made that allowed her to meet the requirements. Snook testified that the administration's lack of awareness and sensitivity about her mobility impairment created roadblocks for her to be successful.

Snook testified that Weinbaum retaliated against her and gave her a low score because Snook disagreed with her review. Snook also explained that the administration's treatment was retaliatory and affected her pay because Weinbaum removed her from two online classes that she had signed a contract to teach after Snook disputed her review. Snook testified that Weinbaum's removal of her service positions indirectly impacted her tenure and promotion because not having those positions lowers her yearly review's evaluation score, but Snook had not been denied tenure because she had not been through that process. Snook explained that she had not applied for any other committees because shortly after she was removed, she went on FMLA leave. It should be noted that Snook also testified that in Fall 2016 she told Weinbaum she would be unable to take leadership roles because she would be on FMLA leave in 2017 from February to November. Snook testified that she was removed as the CSI chapter advisor in October 2017 when she was on leave, and it made sense for Weinbaum to put somebody else in her place. According to Snook, the chapter advisor was a national leadership role that was going to be appointed, and her request not to be assigned leadership roles only pertained to

20

department or university leadership roles. Snook explained that after Weinbaum asked her to be one of the two chapter advisors, Weinbaum asked Greenidge to appoint the two CSI representatives, which did not include Snook.

Snook testified that she did not have a 2017 Annual Review because she was on FMLA leave. Snook explained that she submitted the information for her 2019 Annual Review to her previous Department Chair, Greenidge. Snook explained that in her 2019 Annual Review, she received a score of 3.9 but she was only evaluated based on her teaching because she had been out on FMLA leave. According to Snook, in her 4th Year Review in 2020, she submitted four peer-reviewed publications, and Greenidge encouraged her to increase productivity aligned with her research agenda and seek additional service commitments. The 4th Year Review indicated that Snook needed more focus on her research agenda plus one more national publication, and the standard for scholarly production/research proficiency required three entry items per year. Snook testified that the revised standards were not the tenure and promotion requirements that she was hired under. Snook confirmed that she received a letter from Nichols indicating her agreement with Snook's 4th Year Review, explaining the granting of tenure is dependent upon excellence in teaching and research and scholarly activities, and recommending Snook continue to focus on enhancing teaching effectiveness and a research agenda. Snook further testified that she did not understand what is meant by a research

21

agenda or why her research focus does not meet Lamar's requirements, and she has not been provided an opportunity to receive clarification.

According to Snook, she had not received a promotion at Lamar because she had not met the designated requirements for advancement to associate professor. It should be noted that Snook further testified that the administration's treatment had not affected her raises. Snook explained that she had received four merit pay raises since 2015 and had also received recognition for her work with students with disabilities from Lamar and for her research from the National Women's Institute. Snook testified that she planned to apply for tenure in 2021 to 2022. Snook said Lamar tolled the clock on her tenure for two years because of her FMLA leave.

Regarding her hostile work environment claim, Snook testified that her claim concerns the accreditation process for a counseling and training clinic on campus. Snook explained that Spina did not support the accreditation process and tried to take it away from their department; he also put their department on audit because he felt the clinic was being used for personal gain. Snook testified that the administration closed the clinic, continued the audit for a few years, and found the department had violated department and university policies. According to Snook, approximately twenty faculty members left the department because of the administration's treatment, and the department eventually received the accreditation but lost it due to the lack of administrative support. Snook explained that her claim

includes the administration's negative treatment, the audit, and the loss of the clinic, which hurt her department professionally and reduced enrollment. It should be noted that Snook testified that her claim was not based on her disability because the administration treated the whole department badly, but it did include the administration ignoring her requests.

Snook filed a Response In Opposition to Lamar University's Plea to the Jurisdiction and Motion for Summary Judgment and Brief in Support. According to Snook, she established a prima facie case of disability discrimination, hostile work environment, and retaliation, and material facts exist showing an "organized scheme created to cause [her] to suffer an unfavorable recommendation for tenure and promotion." Snook argued that Lamar condoned Weinbaum's unfavorable treatment and discriminatory actions, which interfered with her ability to succeed in her tenure-track position. According to Snook, by removing her from her service positions and giving her a low evaluation score in 2016, Weinbaum adversely affected her tenure-track status. Snook argued her low annual reviews were created as a pretext to cover Lamar's discriminatory and retaliatory motives. Snook further argued that Lamar failed to provide her with reasonable accommodations and treated her differently than her similarly situated peers by depriving her of the opportunity to discuss her 4th Year Review as required by Lamar's policy. Snook explained that she believed Lamar would deny her tenure and promotion based on her disability and in retaliation

for engaging in protected activity, which included filing an internal complaint in 2014 and an EEOC charge in 2018. Snook maintained that Lamar's Plea to the Jurisdiction and Motion for Summary Judgment should be denied because she has alleged sufficient facts to affirmatively demonstrate the trial court's subject matter jurisdiction and a waiver of Lamar's immunity due to violations of the TCHRA, and her evidence shows genuine issues of material fact exist that necessitate her claims progressing to a trial on the merits. Snook attached, among other documents, the following evidence to her response: her deposition testimony; affidavit of Donna Sheperis; affidavit of Randy Davis; affidavit of Robin Latimer; affidavit of Sedef Smith; Lamar's Policy for Performance Evaluation of Faculty; August 2016 Memo regarding Snook's Two Year Peer Review; Snook's 2015 Annual Review; Snook's 2016 Annual Review; Snook's April 2017 email requesting Weinbaum evaluate her 2016 performance utilizing her requested percentage rates; Snook's 4th Year Review; Nichols's September 2020 letter concurring with Snook's 4th Year Review; October 2017 emails regarding the appointment of Chapter Faculty Advisors (CFAs) for CSI; January 2020 letter awarding Snook graduate faculty membership; and the EEOC's Dismissal and Notice of Rights of Snook's 2018 Charge of Discrimination against Lamar.

Lamar filed a Reply in Support of its Plea to the Jurisdiction & Motion for Summary Judgment. Lamar objected to the affidavits Snook included with her

response, arguing they were irrelevant to Snook's claims and contained hearsay and expert opinions. Lamar argued that it demonstrated, as a matter of law, the trial court lacks jurisdiction because sovereign immunity bars Snook's claims, and Snook failed to establish a prima facie case for any of her claims. Lamar further argued that it demonstrated, as a matter of law, that Snook cannot maintain a lawsuit under the TCHRA. According to Lamar, the affidavits Snook submitted as evidence show the affiants alleged a hostile work environment based on their own experiences, and their allegations do not demonstrate that Snook was subjected to a hostile work environment because of her disability. Lamar argues that Snook offered no evidence in support of any elements of her claims for discrimination, retaliation, failure to accommodate, and hostile work environment, and she failed to show Lamar took any adverse action against her or that she had not received promotion or tenure. Lamar explained that in her deposition, Snook testified she believed her poor evaluation was because Weinbaum disagreed with her research agenda, and she did not believe her removal from her service position was due to her disability. Lamar further argued that Snook's argument regarding tenure is based on her speculation that she may not receive tenure in the future. Concerning Snook's claim for failure to accommodate, Lamar argued that Snook failed to provide evidence showing she requested accommodations and that they were denied.

The trial court conducted a hearing on Lamar's Plea to the Jurisdiction and Motion for Summary Judgment. Lamar's counsel argued that Snook disagreed with her 2016 evaluation and that she lacked a research agenda, and Snook believed Lamar retaliated against her by removing her from her service positions. Lamar's counsel argued that Snook alleged Lamar failed to accommodate her by having classrooms or events in the auditorium, and that her department's accreditation process subjected her to a hostile work environment. Lamar's counsel also contended that Snook failed to present a prima facie case of discrimination and retaliation because she did not present any evidence that she suffered an adverse employment action, because she is still employed, has received all promotions she was entitled to and has not been denied tenure. Lamar's counsel further argued Snook presented no evidence that Lamar denied her any requested accommodations, nor does she claim that she was subjected to a hostile work environment due to her disability. According to Lamar's counsel, the local service positions are rotated between faculty members, Lamar removed Snook from CSI when she was out on FMLA leave, and tenure requires national service positions, which she never applied for.

Snook's counsel asserted that she was subjected to adverse employment decisions when Lamar removed her from service positions, which impacted her ability to succeed in her tenure-track position and build a dossier for when she

applies for promotion of tenure. Regarding accommodations, Snook's counsel argued that not being able to attend required events in the auditorium affected her annual review. According to Snook's counsel, she was subjected to a hostile work environment because Lamar treated her differently and failed to accommodate her. Lamar's counsel explained that Snook had requested FMLA before she was removed from her position, and Snook also requested that local service positions fulfill her obligation to have a national position because it was a hardship for her to travel.

After hearing the parties' arguments, the trial court denied Lamar's Plea to the Jurisdiction and Motion for Summary Judgment without issuing findings of fact and conclusions of law. Regarding the plea, the trial court found that the allegations raised in the pleadings regarding employment discrimination and hostile work environment are sufficient to establish a waiver of sovereign immunity.

The trial court also found there was at least enough evidence that there is some degree of disputed facts on one or more elements of the causes of action and at least a scintilla of evidence as to the claims to deny summary judgment.

PLEAS TO THE JURISDICTION IN TCHRA CLAIMS

Governmental units, such as Lamar, are generally immune from suit. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015); *see also Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012). The waiver extends to "only . . . those suits where the plaintiff actually alleges a violation of the TCHRA

by pleading facts that state a claim thereunder." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). Absent a pleading that sets forth a prima facie case, the governmental unit's immunity from suit has not been waived. *Id.* at 637.

A governmental unit may challenge the existence of a prima facie case through a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226 (noting use of a plea to the jurisdiction and how it mirrors a summary judgment). A governmental unit may also raise the issue in a motion for summary judgment. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550–52 (Tex. 2019) (permitting no evidence motion for summary judgment); *State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009) (permitting traditional motion for summary judgment). We review de novo a trial court's disposition of a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 226, 228. First, we focus on the plaintiff's petition to determine whether the facts affirmatively pleaded demonstrate that subject matter jurisdiction exists. *See id.* at 226. We construe the pleadings liberally in favor of the plaintiff. *See id.* If the plaintiff has not affirmatively pleaded facts to support the trial court's jurisdiction, the issue is one of pleading sufficiency, and the trial court should provide the plaintiff the opportunity to amend the pleading to cure any jurisdictional defects. *Id.* at 226–27. However, if the pleadings affirmatively negate the existence of jurisdiction, the

trial court may grant the plea to the jurisdiction without allowing the plaintiff the opportunity to amend. *Id.* at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider relevant evidence and is required to do so when necessary to resolve the jurisdictional issue raised. *Id.* When evidence is submitted that implicates the merits of the case, the trial court reviews the relevant evidence to determine whether a fact issue exists, and if the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction. *Id.* at 227–28. If the relevant evidence fails to raise a fact issue, then the trial court can rule on the plea as a matter of law. *Id.* at 228. This standard of review generally mirrors the summary judgment standard under Texas Rule of Civil Procedure 166a(c), as it places the burden on the governmental unit to present evidence to demonstrate that the trial court lacks subject matter jurisdiction. *Id.*; *see also* Tex. R. Civ. P. 166a(c).

If the governmental unit meets its initial burden, the burden then shifts to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. We take as true all evidence that is favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea because fact questions must be resolved by the finder of fact. *Id.*

29

We review summary judgment orders *de novo. Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In resolving Lamar's issues, we must consider the ruling on the no-evidence part of Lamar's hybrid motion for summary judgment before considering the ruling on the traditional portion of Lamar's motion. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). In reviewing a no-evidence motion, we must view the evidence in the light most favorable to the non-movant. *Id.* at 601. The Texas Supreme Court has explained that the trial court must grant a no-evidence motion if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively established the opposite of the vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citations omitted). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ridgway*, 135 S.W.3d at 600 (citing *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000)). "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983) (citations omitted).

ANALYSIS

HOSTILE WORK ENVIRONMENT

In issue one, Lamar argues Snook failed to raise a genuine, material fact issue regarding whether she was subjected to a hostile work environment due to her disability because (1) her hostile work environment allegations, which were based on Lamar's audit of her department, are not sufficiently extreme to affect a term or condition of her employment, and (2) she admits that any hostile work environment she experienced at Lamar was unrelated to her disability. Snook contends that not only was her environment hostile due to the accreditation process, the daily nature of the events that transpired–including Lamar's failure to accommodate, her removal from service positions, the limited communication regarding her 4th Year Review, the disparate treatment based on her disability, and her complaint against Weinbaum and Spina–detracted her from her job performance and kept her from advancing in her career. Snook asserts that Weinbaum's and Spina's actions and inactions created a severe and pervasive environment that failed to include the resources to maintain tenure and promotion and ultimately affected the terms, conditions, and privileges of her employment.

The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic; (4) the

31

harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Anderson v. Hous. Cmty. College Sys.*, 458 S.W.3d 633, 646 (Tex. App.—Houston [1st Dist.] 2015, no pet.). In determining whether a hostile work environment exists, courts look to all the circumstances, including the frequency of the discriminatory conduct and whether it unreasonably interfered with the employee's work performance. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 806 (Tex. 2010). To succeed on a hostile work environment claim, the plaintiff must show ongoing harassment based on the protected characteristic that was so sufficiently severe or pervasive that it altered the conditions of her employment and created an abusive work environment. *Anderson*, 458 S.W.3d at 647; *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 324 (Tex. App.— Texarkana 2008, pet. denied). "To satisfy the fourth element of a hostile work environment claim, a plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to create a hostile or abusive working environment." *Donaldson v. Tex. Dep't of Aging and Disability Servs.*, 495 S.W.3d 421, 445 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citations omitted). The work environment must be one that a reasonable person would find hostile or abusive and one that the victim perceived as such. *Id.* (citation omitted).

We first address whether there is more than a scintilla of evidence that Snook was subjected to unwelcome harassment based on her disability. In her live pleading, Snook merely states that "the conduct described herein created a hostile work environment under Texas law." The record shows that Snook testified her hostile work environment claim concerned the accreditation process for a counseling and training clinic on campus. Snook explained that Spina did not support the accreditation process and tried to take it away from their department, and he put their department on audit because he felt the clinic was being used for personal gain. Snook testified that the administration closed the clinic, continued the audit for a few years, and found the department had violated department and university policies. According to Snook, approximately twenty department faculty members left because of the administration's treatment, and the department eventually received the accreditation but lost it due to the lack of administrative support. Snook explained that her claim includes the administration's negative treatment, the audit, and the loss of the clinic, which hurt her department professionally and reduced enrollment. Snook testified that her claim was not based on her disability because the administration treated the whole department badly, but it included the administration ignoring her requests.

The affidavits Snook submitted to support her hostile work environment claim show that the other faculty members in her department were subjected to the same

33

treatment as Snook during the accreditation and annual review process. In her affidavit, Sheperis explained that Spina did not support accreditation, and the whole department was shaken up when Spina wanted to change the manner of evaluations because he thought the department's scores were too high across the board. Sheperis averred that the 2016 evaluations were not based on the previous rubric used for evaluations, and after challenging her evaluation, she was placed where she was the previous year. Sheperis further averred that she and other faculty members were concerned Spina would sabotage their tenure. Sheperis explained that, like other faculty members, she met with Spina to discuss tenure requirements, and "[e]verything he said was by the book in terms of what is required." Sheperis also explained that Spina told her she was removed from her service position because of the audit, and Sheperis believed that her research was halted by the audit. Sheperis averred that the department lost accreditation due to Spina's lack of leadership.

Davis explained that in Fall 2015, Spina and Provost Marquart audited the department's clinic operations, and in Spring 2016, Spina suspended the clinic's operations and "held the specter of criminal wrongdoing over the department." Davis also explained that in Spring and Summer of 2016, Spina and Marquart wanted to withdraw the department's accreditation application, but the department was awarded an accreditation. Davis averred that when Weinbaum was named as Interim Department Chair in Fall 2016, she created an increasingly negative and hostile

environment, disparaging the program and the work of the clinical faculty. Davis further averred that Weinbaum dismissed him as the accreditation liaison and program coordinator, and he resigned as the principal investigator of a federal grant and from Lamar because of Weinbaum's harassment and the toxic/hostile environment. Davis explained that being removed from his positions made it difficult or nearly impossible to meet his service requirements for tenure. According to Davis, the audit and threats associated with potential results were used to intimidate the faculty and besmirch the faculty's reputations. Davis explained that Weinbaum targeted faculty members who had worked closely with Sheperis, and Weinbaum, Spina, and Marquart wanted to dismantle the program because of their personal vendetta against Sheperis. Davis also explained that he believed Weinbaum had a personal axe to grind against him.

Regarding Snook, Davis averred that Weinbaum removed Snook as the Field Experience Coordinator, a position which she held for two years and which was her main outlet for service to the department. Davis further averred that Weinbaum removed Snook from her other service position, blocking her outlets of service and making it impossible to meet tenure requirements. Davis explained that Weinbaum scheduled a group photo twice in locations that were inaccessible to an individual with a disability, and Spina scheduled at least two events in a building that was

35

inaccessible. According to Davis, Weinbaum's and Spina's acts were an attempt to target, demoralize, and embarrass Snook.

Latimer averred that Snook and Davis told her they felt they were being mistreated by the same supervisor in their department. According to Latimer, the general morale of their department fell quickly after Spina and Marquart were hired, and that demoralization appeared to be continuing. Smith averred that she resigned from Lamar in August 2016 due to the toxic environment Spina created. According to Smith, her 2015 Annual Review was conducted by Dr. Bill Holmes, and he arbitrarily evaluated her performance and failed to use a rubric or account for her FMLA maternity leave. Smith explained that she questioned Holmes about her evaluation, and he told her he followed Spina's directions. Smith explained that when she asked Spina about her evaluation, he exhibited hostile behavior toward her, and Smith reported Spina to Lamar's Human Resources for yelling at her in the hallway. According to Smith, after she appealed her 2015 Annual Review, Spina increased her performance score. Smith averred that she resigned from Lamar because she was psychologically impacted by Spina's treatment and did want him to deny her tenure.

We hold that Snook's claims regarding the administration's negative treatment, the audit, and the loss of the clinic do not amount to ongoing harassment based on her disability. *See Anderson*, 458 S.W.3d at 647; *Bartosh*, 259 S.W.3d at

324. Snook also maintains that her hostile work environment claim includes the administration ignoring her requests. The record shows that Snook testified that Weinbaum and Spina did not consider her accommodations in advance like the past administrations, so she chose not to interact with the Dean about accommodations. Snook explained that with assistance she was able to attend a few functions at Price Auditorium, but she quit attending functions there because she had trouble getting around the building. Snook also explained that she told Weinbaum Price Auditorium was inaccessible, and when Lamar offered her a special chair to attend convocation, Snook chose not to attend.

To the extent that Weinbaum and Spina scheduled four events at an inaccessible location, those four instances do not amount to ongoing harassment that was so sufficiently severe or pervasive that it altered the conditions of her employment and created an abusive work environment. *See Anderson*, 458 S.W.3d at 647; *Bartosh*, 259 S.W.3d at 324. Moreover, Snook testified that Weinbaum moved the location of the photo after Snook made a request, but according to Snook, "the fact that I even had to say that to begin with was . . . the problem." Snook testified different things were not taken into consideration in advance, and Weinbaum just lacked an awareness.

Snook also testified that during a one-week period she temporarily taught in another building and did not have a gate pass, and after the week was over, she told

37

Weinbaum she would never teach in that building again because it was too difficult to park. Snook testified that she could access the bathrooms without buttons, but it was difficult to maneuver. Snook further testified there was one occasion where they had to arrange tables and chairs so could access a classroom, and she tripped on wires and fell in front of the students. According to Snook, "different things like this are not taken into consideration in advance," and Weinbaum has always been aware of her disability.

Snook also testified that after her FMLA leave, the Dean allowed her to work from home, and since she has been teaching classes online, she no longer has accessibility issues. The record shows that Lamar accommodated Snook by allowing her to adjust her annual review report, granting her request to change the weight distributions in her annual review, allowing her to teach online despite her contract obligations, adjusting her teaching schedule, granting Snook's request to not hold functions in Price Auditorium, granting Snook's request for furniture placement, and tolling her tenure clock. We hold that Snook's complaints about Lamar's failure to accommodate do not amount to the quality or severity of misbehavior sufficient to subject Snook to ongoing harassment based on her disability that was so sufficiently severe or pervasive that it altered the conditions of her employment and created an abusive work environment. *See Waffle House, Inc.*, 313 S.W.3d at 806. We conclude that Snook's evidence regarding her hostile work environment claim is no more than

38

a scintilla and, in legal effect, is no evidence. *See Kindred*, 650 S.W.2d at 63. Accordingly, the trial court erred by denying Lamar's no-evidence motion for summary judgment on Snook's hostile work environment claim. We sustain issue one.

FAILURE TO ACCOMODATE

In issue two, Lamar argues Snook failed to raise a genuine, material fact issue regarding her failure to accommodate claim where she admits Lamar granted her requested accommodations and that her inability to access facilities was due to her failure to engage in the interactive process.

The TCHRA provides that it is an unlawful employment practice for an employer "to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability," unless the employer can demonstrate the accommodation would impose an undue hardship. Tex. Lab. Code Ann. § 21.128(a). To establish a failure to accommodate claim, a plaintiff must show: (1) she is an individual with a disability; (2) the employer had notice of the disability; (3) with reasonable accommodations she could perform the essential functions of her position; and (4) the employer refused to make such accommodations. *Datar v. Nat'l Oilwell Varco, L.P.*, 518 S.W.3d 467, 474 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citation omitted). The plaintiff has the burden to request reasonable accommodations. *See*

*LeBlanc v. Lamar State College*, 232 S.W.3d 294, 300 (Tex. App.—Beaumont 2007, no pet.). For a discriminatory employment claim based on failure to accommodate, damages may not be awarded if the employer demonstrates it used good faith efforts, in consultation with the otherwise qualified employee with a disability who has informed the employer of the needed accommodation, to identify and make reasonable workplace accommodations that provide the employee with an equally effective opportunity and would not cause undue hardship on the business's operation. Tex. Lab. Code Ann. § 21.128(c).

Once an employee presents a request for an accommodation, the employer is required to engage in an interactive process and have a meaningful dialogue with the employee so together they can determine what reasonable accommodations might be available. *E.E.O.C. v. Chevron Phillips Chemical Co., L.P.*, 570 F.3d 606, 621–22 (5th Cir. 2009). The ADA provides a right to reasonable accommodations, not the employee's preferred accommodation. *Hagood v. Cty. of El Paso*, 408 S.W.3d 515, 525 (Tex. App.—El Paso 2013, no pet.). An employer violates the ADA when it fails to engage in a good faith interactive process. *Id.* However, when the employee is responsible for the breakdown of the interactive process, the employer has not violated the ADA. *See id.*

The record shows Snook chose not to engage in the interactive process with the new administration about which she complains. According to Snook, Weinbaum,

40

Spina, and Marquart did not consider her accessibility in advance like prior administrations had done, and sometimes things were done on the spot, which made her uncomfortable. Snook explained that things did not occur as easily or readily under Weinbaum and Spina. Snook testified that she was hired under a different administration and during her hiring process, she discussed her disability at length, but that was no longer the case. Snook testified that she chose to quit attending functions at Price Auditorium and refused an accommodation that Lamar had offered. Snook explained that in one instance, she did not tell Weinbaum about her accessibility issues until after she finished teaching in a temporary building for one week, and she never had to teach in that building again. Snook also testified that she quit mentioning her accessibility issues. According to Snook, after Lamar told her accessibility buttons were not an ADA requirement, she just "stopped addressing things like that at that point. I just didn't even talk about it anymore." Snook testified that after her FMLA leave, the Dean allowed her to continue working from home and teaching online, so she no longer has accessibility issues.

Snook's testimony shows that she chose not to engage in a good faith interactive process with the new administration about her accessibility issues. *See id*. Since Snook was responsible for the breakdown of the interactive process, Lamar did not violate the ADA for not providing reasonable accommodations that Snook failed to request. *See id.* at 525. The record shows that Lamar provided Snook

41

reasonable accommodations, but Snook felt some of those accommodations were not readily provided in advance. Snook had the burden to request reasonable accommodations, and she cannot just expect Lamar to have "extra-sensory perception" about an accommodation. *See LeBlanc*, 232 S.W.3d at 300 (citations omitted). Importantly, other than Snook's unsupported assertions, there is no evidence in the record showing that Lamar violated the TCHRA by denying Snook a reasonable accommodation and construing the facts in the light most favorable to Snook does not require us to credit otherwise unsupported assertions. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 621 n.11 (5th Cir. 1999).

Based on the record, we hold there is no evidence Lamar refused to make reasonable accommodations so Snook could perform the essential functions of her position. *See* Tex. Lab. Code Ann. § 21.128(a); *Datar*, 518 S.W.3d at 474; *LeBlanc*, 232 S.W.3d at 302. We conclude that Snook's evidence regarding her failure to accommodate claim is no more than a scintilla and, in legal effect, is no evidence. *See Kindred*, 650 S.W.2d at 63. Accordingly, the trial court erred by denying Lamar's no-evidence motion for summary judgment on Snook's failure to accommodate claim. We sustain issue two.

UNLAWFUL DISABILITY DISCRIMINATION/DISPARATE TREATMENT

In issue three, Lamar argues Snook failed to establish prima facie disparate treatment claim because she cannot establish a prima facie claim of disability

discrimination; Snook has no evidence that Lamar took any adverse treatment against her; and she failed to identify a similarly situated non-disabled comparator who was treated better than her or identify any other evidence suggesting Lamar's actions were based on discrimination.

Snook brought a disability discrimination case under the TCHRA alleging claims for unlawful discrimination and disparate treatment. To establish unlawful discrimination, a plaintiff can rely on direct evidence of "what the defendant did and said" or on circumstantial evidence. *Tex. Tech Univ. Health Sci. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020); *Garcia*, 372 S.W.3d at 634. When a plaintiff relies on circumstantial evidence to establish an unlawful discrimination claim, we follow the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Flores*, 612 S.W.3d at 305. Under the *McDonnell Douglas* framework: (1) the plaintiff must create a presumption of illegal discrimination by establishing a prima facie case; (2) the defendant must rebut that presumption by establishing a legitimate, nondiscriminatory reason for its employment action; and (3) the plaintiff must overcome the rebuttal evidence by establishing the defendant's stated reason is a mere pretext. *See McDonnell*, 411 U.S. at 802–04, 807.

Under the TCHRA, and employer commits an "unlawful employment practice" if, because of the employee's disability, the employer "discharged an

individual or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code Ann. § 21.051; *see Flores*, 612 S.W.3d at 304. One purpose of the TCHRA is to provide for the execution of the policies embodied in Title I of the ADA and the subsequent amendments. Tex. Lab. Code Ann. § 21.001(3) (citation omitted). Under both the TCHRA and ADA, to establish a prima facie disability discrimination case in the employment context the plaintiff must show: (1) she has a disability; (2) she is qualified for the job; and (3) she suffered an adverse employment decision because of her disability. *See El Paso Cty. v. Vasquez*, 508 S.W.3d 626, 639 (Tex. App.—El Paso 2016, pet. denied) (citation omitted). Generally, an employer commits an unlawful practice because of an employee's disability if the employee's disability was a motivating factor for the unlawful practice, despite whether other factors also motivated the practice. *Flores*, 612 S.W.3d at 305 (citation omitted).

Based on our review of the record, Snook failed to establish prima facie disability discrimination case as she failed to show that she suffered an adverse employment decision because of her disability. *See Vasquez*, 508 S.W.3d at 639. First, we note that Snook has not been denied tenure, so any arguments regarding her inability to meet tenure requirements are not ripe. Secondly, the record shows that Snook is still employed with Lamar and has not been denied any position or salary increase. Snook testified that the administration's treatment had not affected

44

her raises, and Weinbaum averred that Snook's adjusted schedule had no impact on her stipend.

Additionally, Snook's 2016 Annual Review shows that Snook had adequate performance and merit, which was satisfactory, but Snook failed to meet her journal article publication goal and show a clear research agenda. Snook testified that she did not think her score of two for research in her 2016 Annual Review was based on her disability. The record shows that Snook's 2015 Annual Review, 2nd Year Peer Review conducted in 2016, and 4th Year Review conducted in 2020, all mentioned that Snook needed to continue developing her research agenda.

Regarding the removal from her service positions, the record shows that Weinbaum granted Snook's request to not be assigned leadership positions because she was going on FMLA leave. Snook testified that it made sense for Weinbaum to put somebody else in her place as the CSI chapter advisor when she was on FMLA leave. Additionally, Snook did not present any evidence showing that Weinbaum removed her as Field Experience Coordinator because of her disability. Instead, the record shows that Weinbaum encouraged Snook to participate in service with professional organizations, community, and at the university and college level, which would weigh more towards tenure. The record shows that Snook's 2015 Annual Review and 2nd Year Peer Review also noted that she needed to seek out service work at the college and university level.

45

We conclude there is no evidence that Snook suffered an adverse employment action because of her disability. *See Vasquez*, 508 S.W.3d at 639. We further conclude that Snook's evidence regarding her disability discrimination claim is no more than a scintilla and, in legal effect, is no evidence. *See Kindred*, 650 S.W.2d at 63. Accordingly, the trial court erred by denying Lamar's no-evidence motion for summary judgment on Snook's disability discrimination claim.

To prove a prima facie case of disparate treatment, the plaintiff must show that she was treated less favorably than "similarly situated" non-protected class members. *See Ysleta Ind. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). Employees are similarly situated if their circumstances are comparable in all material respects, which include similar standards, supervisors, and conduct. *Id.* (citations omitted). Snook had to provide more than a scintilla of evidence that others who were similarly situated but not in the same protected class as Snook were treated more favorably. *See* Tex. Lab. Code Ann. § 21.051. The similarly situated employees must be "nearly identical," and "[e]mployees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *Flores*, 612 S.W.3d at 312 (citations omitted).

To establish the fourth element, Snook was required to identify a similarly situated "comparator employee," which Snook failed to do in her live pleading or in

her summary judgment response. Snook's summary judgment evidence includes affidavits of other faculty members in her department. To the extent that Snook alleges that those faculty members are "similarly situated" non-protected class members, we hold that those affidavits do not show that she was treated less favorably than those "similarly situated" non-protected class members. *See Monarrez*, 177 S.W.3d at 917. We conclude there is no evidence showing that Snook was treated less favorably than "similarly situated" non-protected class members. Accordingly, the trial court erred by denying Lamar's no-evidence motion for summary judgment on Snook's disparate treatment claim. We overrule issue three.

## RETALIATION

In issue four, Lamar argues Snook cannot establish a prima facie retaliation claim because Snook's accommodation requests do not constitute protected activity under the TCHRA, Snook failed to show Lamar took any materially adverse action against her after she filed a charge of discrimination in February 2018, and even if Snook had evidence of a materially adverse action, she cannot create a fact issue with respect to causation. Snook counters that she presented sufficient evidence establishing she suffered a materially adverse action, including (1) her low annual evaluation, (2) Lamar's departure from procedural regularities, (3) her removal from service positions, and (4) Lamar's lack of communication. According to Snook, these actions deprived her of obtaining promotion and tenure.

47

Under the TCHRA, an employer commits an unlawful employment practice if it retaliates or discriminates against a person who, pursuant to the TCHRA, (1) opposes a discriminatory practice, (2) makes or files a charge, (3) files a complaint, or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. Tex. Lab. Code Ann. § 21.055. To make a prima facie showing of retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Dias v. Goodman Mfg., Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The employee must establish that absent her protected activity, the adverse employment action would not have occurred when it did. *Donaldson v. Tex. Dep't of Aging and Disability Servs.*, 495 S.W.3d 421, 441 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). The employee need not establish that the protected activity was the sole cause of the employment action. *Id.* (citation omitted). The individual is only protected from actions that a reasonable employee would have found to be materially adverse, meaning those actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employer. *Id.* (citations omitted).

In her live pleading, Snook alleged that Lamar retaliated against her for complaining about disability discrimination by giving her poor performance reviews

48

and removing her from her service roles and courses, depriving her of the ability to fulfill tenure and promotions service requirements, professional development, career enhancements, and wages. The record shows that in February 2017, Snook complained that Weinbaum's 2016 Annual Review failed to consider her physical limitations in terms of service and research requirements, and in 2018, Snook filed a discrimination charge with the Texas Workforce Commission and the EEOC.

First, we note that Snook's 2016 Annual Review was completed before Snook made any complaints regarding disability discrimination, so there was no causal connection between her protected activity and the score Weinbaum gave her. *See Donaldson*, 495 S.W.3d at 441. Moreover, after Snook complained about her low score, Weinbaum allowed Snook to submit a revised report and granted Snook's request to change the weight distributions. The record shows that in Fall of 2017, Weinbaum accommodated Snook by allowing her to teach online and adjusting her teaching schedule because she was on FMLA leave. Further, Snook's adjusted schedule had no impact on her stipend.

The record shows that Lamar granted Snook's tolling requests to stop her tenure clock, and Snook had not been promoted to associate professor because she had not yet applied for tenure. Snook testified that since 2015, she had received four merit pay raises, and the administration's treatment had not affected her raises. Weinbaum averred that Snook is still employed with Lamar and has not been denied

49

any position or salary increase because of her disability or for any other discriminatory purpose. Regarding the removal from her service positions, we have already explained that Snook requested not to be assigned leadership positions because she was going on FMLA leave. Snook testified that she was removed as the CSI chapter advisor when she was on FMLA leave, and that it made sense for Weinbaum to put somebody else in her place. The record also shows that Snook's transition out of the Field Experience Coordinator position did not impede her ability to meet service requirements because program work tends to not rise to the level of service on the national, professional, or university/college level.

We hold that the actions about which Snook complains are not actions that a reasonable employee would have found to be materially adverse or that would have likely deterred her from complaining to the EEOC, Lamar or the courts. *See id.* at 441. We conclude there is no evidence that Snook suffered an adverse employment action. *See Pineda*, 360 F.3d at 487; *Dias*, 214 S.W.3d at 676. We further conclude that Snook's evidence regarding her retaliation claim is no more than a scintilla and, in legal effect, is no evidence. *See Kindred*, 650 S.W.2d at 63. Accordingly, the trial court erred by denying Lamar's no-evidence motion for summary judgment on Snook's retaliation claim. We sustain issue four.

In issue five, Lamar contends that even if Snook met her prima facie burden of discrimination or retaliation, Lamar had legitimate, nondiscriminatory and

nonretaliatory reasons for its actions. Since we sustained Lamar's third and fourth issues, we need not address this issue. *See* Tex. R. App. P. 47.1. Having sustained issues one through four, we conclude the trial court erred by denying Lamar's No-Evidence Motion for Summary Judgment. Accordingly, we reverse the trial court's order denying Lamar's Plea to the Jurisdiction and Motion for Summary Judgment and render judgment that Snook take nothing against Lamar.

REVERSED AND RENDERED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on June 16, 2022
Opinion Delivered September 29, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.